Patti MOORE

v.

CITY OF LEWISTON, et al.

Supreme Judicial Court of Maine.

Argued May 22, 1991.
Decided Aug. 7, 1991.

Michelle A. Small, Jon Oxman (orally), Linnell, Choate & Webber, Auburn, for plaintiff.

Joy Cantrell (orally), Evan M. Hansen, Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

Patti Moore appeals from a summary judgment against her in the Superior Court (Androscoggin County, *Alexander, J.*) in her suit seeking damages against the City of Lewiston ("City") and two Lewiston police officers pursuant to the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1980 & Supp.1990), and the federal Civil Rights Act, 42 U.S.C. § 1983. The court held that the police officers and the city were immune under the Tort Claims Act because the officers were engaged in a discretionary law enforcement function, and that no claim was stated under section 1983. We affirm as to the section 1983 claims and the common law claims against the police officers, but vacate as premature the grant of summary judgment on the common law negligence claim against the City.

In the early morning hours of April 9, 1988, Moore was a passenger in an automobile that was stopped by the Lewiston police, who arrested the driver for operating under the influence and operating after suspension. When the officers took the driver into custody, they asked him what he wanted done with his vehicle and he stated that he did not want Moore to operate it. Moore may have asked the police officers for a ride; she recalls that she did, but the officers recall that she did not.[1] In any event, Moore began walking toward her home in Auburn. While walking home, she was assaulted and robbed by two unidentified assailants. She suffered injuries to her head, face, wrist, and fingers, and still experiences pain, dizziness, facial numbness, blackouts, impairment of arm and hand function, and emotional distress.

Moore sued the City and the two police officers for common law negligence (Count I) and for violation of her federal civil rights through failure to protect her and through deliberate indifference to her safety (Counts II and III). Prior to the deadline for the completion of discovery, the defendants moved for summary judgment on the basis of the immunity conferred by the Maine Tort Claims Act,[2] and

1. The Lewiston Police Department has a policy against providing citizens with transportation in police vehicles except in special circumstances:

    *Transporting Citizens*—citizens shall be transported in departmental vehicles only when necessary to accomplish a police purpose. Such transportation shall be done in conformance with departmental policy or at the direction of a commanding officer, immediate superior or communications center.

    Lewiston Police Department Manual § 1.09. The record discloses that the police station was nearby and that there were two telephone booths near the intersection of Walnut and Bartlett Streets, where the stop occurred.

2. Although the defendants' motion for summary judgment mistakenly cited only section 8111, which affords governmental employees immunity from personal liability, and not section 8103, which affords immunity to governmental entities, it gave adequate notice that the defendants relied on the immunity afforded by the Tort Claims Act. *Cf. Rutherford v. City of Portland,* 494 A.2d 673, 675 (Me.1985) (immunity defense not forfeited by procedural default).

on the basis that no special relationship existed sufficient to give rise to a duty to protect under section 1983. Moore argued that summary judgment was premature, in that she had not yet received in discovery a copy of the City's liability insurance policy, and thus a factual issue potentially remained as to the extent to which the City had waived immunity pursuant to 14 M.R.S.A. § 8116.

The court granted summary judgment for the defendants. Moore now appeals.

### I.

■ The parties urge us to decide whether a "special relationship" existed that compelled the City or its police officers to extend police protection to Moore. *See generally* Anno., *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory That Only General, Not Particular, Duty Was Owed Under Circumstances,* 38 A.L.R.4th 1194 (1985 & Supp.1990). We reject the "special relationship" doctrine because it is grounded in the common law of sovereign immunity,[3] which in Maine has been entirely displaced and supplanted by the enactment of the Maine Tort Claims Act. *See Darling v. Augusta Mental Health Inst.,* 535 A.2d 421, 424 (Me.1987). Rejecting this test parallels our previous rejection of the distinction between governmental and proprietary acts under common law sovereign immunity, following the adoption of the Tort Claims Act. *Compare Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 419 (Me.1987) (rejecting governmental-proprietary distinction, under Tort Claims Act) *with Blier v. Inhabitants of Fort Kent,* 273 A.2d 732, 734 (Me.1971) (applying distinction, under former statute deemed to incorporate common law sovereign immunity doctrine). *Accord, Ryan v. State,* 134

Ariz. 308, 656 P.2d 597, 38 A.L.R.4th 1188 (1982) (rejecting "special relationship" test).

■ Absent the immunities afforded by the Tort Claims Act, Count I of the complaint adequately stated a common law negligence claim, both directly against the officers and vicariously against the City. In a case of this nature, the question of duty—that is, what action was reasonable in particular circumstances—is primarily factual. *See Restatement (Second) of Torts* §§ 314, 314A, 324 (1965). *Accord, Suarez v. Dosky,* 171 N.J.Super. 1, 407 A.2d 1237, 1240–41 (1979). Thus, without deciding whether the police officers owed Moore a duty in the circumstances, we do decide that, absent immunity, this case would not be an appropriate one for summary judgment and Moore would be entitled to a trial of the facts.

### II.

Summary judgment would be appropriate, however, if the defendants are in any event immune from tort liability. "We have previously recognized that immunity is an issue distinct from liability." *Polley v. Atwell,* 581 A.2d 410, 412 (Me.1990). Accordingly, we examine the Maine Tort Claims Act to determine the immunity of governmental units and their employees in these circumstances.

■ We turn first to Moore's claim against the City. For governmental entities, the Act confers a general grant of immunity, subject to limited exceptions. 14 M.R.S.A. § 8103(1) (1980 & Supp.1990)[4]; *Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 419 (Me.1987). In addition to the exceptions to immunity enumerated in section 8104–A[5], the Act also provides that

---

**3.** *See* Anno., 38 A.L.R.4th 1194, § 4 at 1203–1205. Although conceptually related, the "special relationship" doctrine of sovereign immunity is distinct from the "special relation" giving rise to a common law duty of care under *Restatement (Second) of Torts* § 314A (1965).

**4.** Section 8103(1) states:
Except as otherwise expressly provided by statute, all governmental entities shall be im-

mune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter.
14 M.R.S.A. § 8103(1) (1980 & Supp.1990).

**5.** The exceptions to immunity enumerated in section 8104–A are for property damage, bodily injury, or death arising from ownership, main-

a governmental entity may procure liability insurance, and "[i]f the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage." 14 M.R.S.A. § 8116 (Supp. 1990). This insurance coverage waiver extends to all activities within the general immunity afforded by the Act. *See Stretton v. City of Lewiston*, 588 A.2d 739, 740 (Me.1991); *Swallow v. City of Lewiston*, 534 A.2d 975, 977 (Me.1987).

Thus, Moore can state a claim against the City if the City has waived immunity pursuant to section 8116 by procuring liability insurance coverage that extends to its alleged negligent failure to afford her police protection. Moreover, the City had the burden to show that it did not have insurance coverage for Moore's claim. *See Robinson v. Washington County*, 529 A.2d 1357, 1361 (Me.1987). The defendants

moved for summary judgment before the discovery deadline, even though Moore's pending request for production of documents included the insurance policy, and they produced no evidence to show that insurance coverage was lacking. Summary judgment as to the common law negligence claim against the City was therefore premature.[6] *See* M.R.Civ.P. 56(f); *Stretton*, at 741; *Robinson*, 529 A.2d at 1361.

### III.

■ We turn next to the police officers. With regard to governmental employees, the Tort Claims Act applies a policy of broad liability, subject to enumerated exceptions. *See* 14 M.R.S.A. § 8102(2–A) (Supp.1990).[7] The exceptions are enumerated in the immunity provisions of section 8111. Section 8111(1)(C) affords governmental employees an absolute immunity from personal civil liability for performing discretionary functions.[8]

---

tenance, or use of vehicles, machinery, or equipment; from construction, operation, or maintenance of public buildings; from accidental discharge of pollutants; or from construction, cleaning, or repair of roads and the like. *See* 14 M.R.S.A. § 8104–A (Supp.1990).

6. Neither the defendants nor Moore filed the statement of material facts that is required by M.R.Civ.P. 7(d). The rule, which became effective July 1, 1990, states:

**(d) Motions for Summary Judgment.**

(1) In addition to the material required to be filed by subdivision (b) of this rule, upon any motion for summary judgment there shall be annexed to the motion a separate, short and concise statement of the material facts, supported by appropriate record references, as to which the moving party contends there is no genuine issue to be tried.

(2) The party opposing a motion for summary judgment shall file with the material required to be filed by subdivision (c) of this rule a separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party.

M.R.Civ.P. 7(d). The Advisory Committee's Note states:

The new rule will require some adjustment of the current practice under which, too fre-

quently, generalized claims that there are or are not disputes as to material facts are presented in arguments on motions for summary judgment.

M.R.Civ.P. 7 advisory committee's note to 1990 amendment, Me.Rptr., 563–575 A.2d LXXIII. Because neither party raised the issue, either before the Superior Court or on appeal, we do not decide whether failure to comply with the rule should have barred either party from asserting or denying a genuine issue of material fact as to the scope of insurance coverage. *Cf. Onat v. Penobscot Bay Medical Center*, 574 A.2d 872, 873 n. 2 (Me.1990) (failure to comply with M.R.Civ.P. 75A(a)(4) may result in refusal to consider arguments on appeal).

7. The statute states:

**2–A. Permitted by this chapter or permitted under this chapter.** "Permitted by this chapter" or "permitted under this chapter," as applied to claims or actions against a governmental entity or its employees, shall be construed to include *all claims or actions expressly authorized by this Act against a governmental entity* and *all common law claims or actions against employees for which immunity is not expressly provided* by this Act.

14 M.R.S.A. § 8102(2–A) (Supp.1990) (emphasis added).

8. The statute in effect at the time of the incident giving rise to this case stated, in pertinent part:

**§ 8111. Personal immunity for employees; procedure**

**1. Immunity.** Notwithstanding any liability that may have existed at common law,

Moore argues that the officers were not engaged in a discretionary function. We disagree. Contrary to Moore's argument, the exercise of discretionary functions is not limited to high ranking policymakers. The officers were exercising a discretionary function because they were required to use their judgment while acting in furtherance of a departmental policy restricting the use of police vehicles to transport private citizens.[9] Because the discretionary function immunity afforded by section 8111 is a question of law, the police officers were entitled to summary judgment. *See Polley*, 581 A.2d at 413; *Darling*, 535 A.2d at 425–26.

Because the officers were immune from personal civil liability, we must next consider whether their immunity, like that of the City, could have been waived by insurance coverage. Section 8116 provides that a governmental entity "may purchase insurance or may self-insure on behalf of its employees to insure them against any personal liability for which a governmental entity is obligated or entitled to provide defense or indemnity under section 8112."

> employees of government entities shall be absolutely immune from personal civil liability for the following:
>
> \* \* \* \* \* \*
>
> C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function is performed is valid;
>
> 14 M.R.S.A. § 8111(1) (1980 & Supp.1987).

9. *See* footnote 1.

10. Nor do the defense and indemnification provisions of section 8112, to which section 8116 makes reference, imply any such waiver. That section states, in pertinent part:

> **§ 8112. Defense and indemnification of employees.**
>
> **1. When a governmental entity is not liable.** A governmental entity, with the consent of the employee, shall assume the defense of and, in its discretion, may indemnify any employee against a claim which arises out of an act or omission occurring within the course and scope of employment and for which the governmental entity is not liable....
>
> \* \* \* \* \* \*
>
> **2. When the governmental entity is liable.** A governmental entity shall, with the

However, unlike the parallel provision in section 8116 regarding governmental entities, which states that "the *governmental entity* shall be liable ... to the limits of the insurance coverage" (emphasis added), this provision does not purport to waive the personal immunity of insured employees.[10] Thus, regardless whether the City's insurance coverage extended to the defense or indemnity of the police officers, their personal immunity from liability could not have been waived. Accordingly, summary judgment was properly granted with regard to the common law negligence claim against the police officers.

## IV.

Moore has no relief under 42 U.S.C. § 1983[11] for the police officers' failure to protect her, or for their indifference to her safety, because she was not in their custody. *See DeShaney v. Winnebago County Dep't. of Social Services*, 489 U.S. 189, 198–200, 202 n. 10, 109 S.Ct. 998, 1005–1006, 1007 n. 10, 103 L.Ed.2d 249 (1989). Even if a category of "affirmative" acts

> consent of the employee, assume the defense of and shall indemnify any employee against a claim which arises out of an act or omission occurring within the course and scope of employment and for which sovereign immunity has been waived under section 8104–A, under another law or by legislative authorization....
>
> \* \* \* \* \* \*
>
> **2–A. Suits against employees under federal law.** A governmental entity, with the consent of the employee, shall assume the defense of, and, in its discretion, may indemnify any employee against any claim that is brought against the employee under any federal law and that arises out of an act or omission occurring within the course and scope of employment....
>
> 14 M.R.S.A. § 8112 (Supp.1990).

11. Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
>
> 42 U.S.C. § 1983.

survives the U.S. Supreme Court's holding in *DeShaney*, as some courts [12] have found, nothing in the record before us would support a finding that the defendants affirmatively deprived Moore of a clearly established federal civil right. We therefore affirm the grant of summary judgment as to Counts II and III.

The entry is:

Judgment on Count I vacated as to defendant City of Lewiston; remanded for further proceedings in accordance with the opinion herein.

Judgment otherwise affirmed.

McKUSICK, C.J., and WATHEN, CLIFFORD and BRODY, JJ., concur.

GLASSMAN, Justice, with whom ROBERTS, Justice, joins, concurring in part and dissenting in part.

While I join in the remainder of the court's opinion, I do not agree with the court's holding in Part III that the individual police officers are entitled to a summary judgment on the ground of absolute immunity under the Maine Tort Claims Act. Because I conclude that the officers' decision to deny Moore any form of assistance following the arrest of her companion on April 8, 1988, cannot, as a matter of law, be reasonably encompassed within the officers' official duties, I would vacate the summary judgment for the police officers.

The Maine Tort Claims Act provides absolute immunity from civil liability to any governmental employee, including a police officer, for "a discretionary act [that] is reasonably encompassed by the duties of the governmental employee in question." 14 M.R.S.A. § 8111(1) (Supp.1990). In order to find an individual police officer entitled to discretionary function immunity therefore, we must scrutinize the nature of the alleged police conduct to determine: (1)

that the act or omission alleged falls within the core of conduct considered an official police function and (2) that the act or omission was "discretionary" in nature. Absent either finding, the individual police officer will not be entitled to immunity for the alleged conduct. *See, e.g., MacKerron v. Madura,* 474 A.2d 166, 167 (Me.1984) (police interference with attorney-client relationship outside scope of official duties); *Kane v. Anderson,* 509 A.2d 656, 657 (Me. 1986) (execution of arrest warrant is ministerial, not discretionary act).

In this case, the court focuses entirely on the narrow issue of whether the officers are immune from liability for their refusal to offer Moore a ride in the police cruiser and determines that the officers' decision is a discretionary function covered by section 8111(1) because the officers were required to use their judgment while acting in furtherance of a departmental policy not to transport citizens. Even assuming this questionable characterization of the nature of that particular "decision," the court, by its silence, suggests that the officers' refusal "to offer [Moore] any reasonable alternative, such as requesting the Police Department dispatcher to send a taxicab to the scene of the arrest," an explicit allegation in Moore's complaint, is also encompassed within their broader discretionary decision not to offer her a ride. Such a sweeping analysis paints the scope of discretionary immunity far too broadly and raises very troubling implications. Given this *carte blanche* definition of immunity, one can easily hypothesize a case where the police leave a small child unattended at the scene of an arrest in circumstances where the risk to that child far exceeds the burden on the police officers to act to remove the risk created by their actions. I cannot believe that the Legislature intended section 8111(1) to preclude a civil action against an officer for this type of conduct.

---

**12.** There is a distinct split among the federal Circuit Courts of Appeals on this question. *Compare Gregory v. City of Rogers, Arkansas,* 921 F.2d 750, 754–55 (8th Cir.1990); *Cornelius v. Town of Highland Lake, Ala.,* 880 F.2d 348, 355–56 (11th Cir.1989), *cert. denied* — U.S. —, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990), *and Wood v. Ostrander,* 879 F.2d 583, 589–90 (9th Cir.1989),

*cert. denied* — U.S. —, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990) (finding duty) *with Hilliard v. City and County of Denver,* 930 F.2d 1516 (10th Cir.1991) *and Brown v. Grabowski,* 922 F.2d 1097, 1113–17 (3d. Cir.1990), *cert. denied* — U.S. —, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991) (no duty). *See also Wood,* 879 F.2d at 596–601 (Carroll, J., dissenting).

Here, the officers' refusal was based on a police department policy that stated that "citizens shall be transported in departmental vehicles only when necessary to accomplish a police purpose ... done in conformance with departmental policy or at the direction of a commanding officer, immediate supervisor or communications officer." *See* Lewiston Police Dept. Manual § 1.09. We have previously found conduct "discretionary" when the governmental employee is given authority to make individualized decisions in any way that the employee deems will advance an explicit and fundamental government policy. *See Polley v. Atwell,* 581 A.2d 410, 413 (Me.1990) (decision of whether disclosure of particular information in foster care records to prospective foster parents will comport with fundamental state policy of confidentiality is within discretion of DHS caseworker, entitling her to discretionary immunity); *see also Miller v. Szelenyi,* 546 A.2d 1013, 1021–22 (Me.1988).

Assuming that the police department policy in the present case can be deemed fundamental, which is doubtful, the only discretion possibly authorized by the policy was whether the contemplated use of the patrol car to transport Moore was a "police purpose," or whether to check in with a supervisor for clearance. The court improperly implies that the police officer might be the arbiter of the scope of the term "police purpose," a term that presumably has an objective definition not left to the individual officer on patrol and a term that is presumably coextensive with the scope of official police duties. Because Moore was not a person under arrest for any crime, the officers had no discretion but to deny Moore a ride or to contact a supervisor, who would in turn make a decision for them. Such strictly ministerial acts that require at best a small modicum of judgment have never been held entitled to discretionary function immunity. *See Kane v. Anderson,* 509 A.2d 656, 657 (Me. 1986). The fact finder in this case might conclude that the officers' implementation of the department policy was a negligently performed ministerial function. *Cf. id.* (officer negligent in manner in which he exe-

cuted arrest warrant, a purely ministerial act).

Moreover, not all discretionary acts engaged in by police officers are reasonably encompassed within the scope of their authority or duty as law enforcement officers. Because the police may have a "choice," in nonlegal parlance, whether to offer assistance to citizens in many cases, it does not follow that their refusal to do so qualifies as a "discretionary function" for purposes of the legal definition of immunity under section 8111(1). While commendable, routine offers of assistance to a citizen in peril do not fall within the core group of essential or traditional police functions. 30-A M.R.S.A. § 2671 (Pamph. 1990) (replacing former 30 M.R.S.A. § 2361 (1978)), which enumerates the powers of municipal police officers, specifically provides that "officers may serve criminal and traffic infraction processes and arrest and prosecute offenders of the law." Certain core police functions, including investigation of crime and arrest, arise from this primary power and duty to *enforce the laws,* and the principle of immunity is premised on a policy that these core police functions must be fulfilled "without deterrence or intimidation by the fear of personal liability and vexatious suits." *Darling v. Augusta Mental Health Institute,* 535 A.2d 421, 425 (Me.1987). Indeed, such police enforcement measures may often *incidentally* involve some assistance to noncriminal citizens, who have been placed directly at risk by the acts of a person committing or about to commit a criminal offense and who are assisted by the police officers' detention and arrest of that offender. Absent evidence of a crime, however, a law enforcement officer is under no duty to offer assistance to any person who requests it. Because these offers of assistance are not within the core group of essential police functions, the police officers are not entitled to discretionary immunity for their decision to offer or refuse requests for assistance. The primacy of this functional approach to immunity, which focuses on the character of the act and not the character of the actor, is well estab-

lished. *Cf. Burns v. Reed,* — U.S. —, —, 111 S.Ct. 1934, 1935–36, 114 L.Ed.2d 547 (1991) (prosecutorial immunity does not encompass prosecutor's legal advice to police officers because conduct is not "intimately associated with the judicial phase of the criminal process" which is at core of prosecutor's function).

In the present case, the police officers are not entitled to absolute immunity for their alleged decision not to offer even minimal assistance to Moore. Summary judgment is therefore appropriate only if there was no genuine issue of material fact and the officers were entitled to judgment as a matter of law. *See Saltonstall v. Cumming,* 538 A.2d 289, 290 (Me.1988). The question whether the officers owed a duty to Moore is a question of law. *See Fish v. Paul,* 574 A.2d 1365, 1366 (Me. 1990). Under the common law of negligence, any person who observes another person in circumstances where the risk of harm is reasonably foreseeable may offer assistance to that person, but the law imposes no duty to do so. This rule applies to police officers confronted by situations involving all manner of potential risks to citizens when there is no evidence that a criminal offense has been committed or is about to be committed. However, a duty to give reasonable assistance in order to avoid harm will arise when the person who could offer assistance is the party who "does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another." *Restatement (Second) of Torts* § 321; *see also Trusiani v. Cumberland and York Distribs.,* 538 A.2d 258, 262 n. 4 (Me.1988); Prosser & Keeton, *Law of Torts* § 56, at 377 (1984). This rule will apply even when the risk of harm has been created by an innocent or otherwise justifiable act of the police officer. *See Restatement (Second) of Torts* § 322 comment a (1977).

Although the officers' arrest of the driver in the instant case was clearly a discretionary function that immunizes the officers from civil liability for that act, the official arrest was completed by the time Moore allegedly asked for their assistance. Here, the fact finder may determine that the police officers breached their duty to Moore because they should have realized that their arrest of her companion had subjected Moore to a risk of physical harm, that the risk was unreasonable under the circumstances, and that the measures required to lessen that risk were minimal. Accordingly, I would vacate the summary judgment in favor of the police officers on Moore's common law negligence claim against those officers.