Wayne ADRIANCE et al.

v.

TOWN OF STANDISH.

Supreme Judicial Court of Maine.

Argued Oct. 10, 1996.
Decided Dec. 18, 1996.

Paul F. Macri (Orally), John E. Sedgewick, Berman & Simmons, P.A., Lewiston, for Plaintiffs.

Daniel Rapaport (Orally), Preti, Flaherty, Beliveau & Pachios, LLC, Portland, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

GLASSMAN, Justice.

Wayne Adriance and Barbara Adriance appeal from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of the Town of Standish on their complaint seeking damages against the Town pursuant to the Maine Tort Claims Act (the Act), 14 M.R.S.A. §§ 8101–8118 (1980 & Supp.1996). The Adriances contend that the court erred in concluding that certain acts and omissions by an attendant in the operation and maintenance of the Town's waste transfer station were discretionary functions protected by the provisions of section 8104(B)(3) of the Act. We agree and vacate the judgment.

The record reveals the following undisputed facts: Wayne suffered injuries after falling into a trash hopper at the Town's waste transfer station on June 29, 1993. The station is a large garage-type structure containing an office and a trash hopper. The trash hopper is surrounded by a concrete wall except on the side of the back-up area. The back-up area has two chain-link safety gates that can be swung closed where the back-up area meets the hopper. Trash may be deposited in the hopper either at the drive-through side or at the back-up area. When the gates in the back-up area are closed, trash may be thrown over the gates into the hopper. The trash hopper contains a mechanical compactor which, when activated, compresses the trash in the hopper into a trailer parked under the transfer station.

Wayne went to the transfer station on June 29, 1993, with his son to dispose of trash. The gates in the back-up area were open, and Wayne backed his pick-up truck to the edge of the hopper and began to unload the trash from it. As he was dumping a barrel of trash into the hopper, Wayne lost his balance and fell into the trash hopper causing the claimed injuries.

The operation of the transfer station is governed by an operation and maintenance manual, the Town of Standish Solid Waste Ordinance, and Department of Environmental Protection (DEP) Solid Waste Management Regulations. These authorities do not address when the safety gates in the back-up area must be closed, when the attendant should help patrons of the station position their vehicles in the back-up area or what warnings, if any, must be given to users of that area. Accordingly, these decisions were left to the attendant.

By their complaint against the Town, the Adriances seek damages for the injuries suffered by them for the alleged negligent failure of the Town "to properly design, construct, operate, maintain, and supervise" the transfer station. Following the Town's responsive pleading to the complaint, it moved for a summary judgment on the ground that, pursuant to the Act, the Town is immune from liability to the Adriances. After a hearing on the Town's motion, the trial court concluded that the transfer station is a public building, but as a matter of law the design, construction, operation, maintenance and supervision of the transfer station are discretionary functions immune from tort liability pursuant to the Act and granted the Town's motion. From the summary judgment entered accordingly, the Adriances appeal.

The Adriances contend the trial court erred by its determination that the attendant was performing a discretionary function thereby entitling the Town to a summary judgment as a matter of law. They argue, as they did before the trial court, that the alleged negligent conduct of the attendant did not establish and was not in furtherance of basic governmental policy goals. Accordingly, there remain genuine issues of material facts regarding whether that conduct was a negligent breach of the duty of care owed to Wayne as a user of the transfer station and a proximate cause of their claimed injuries.

■ When a party appeals from an order granting a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the record supports the trial court's conclusion that there is

no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Simpson v. Central Maine Motors, Inc.,* 669 A.2d 1324, 1325–26 (Me.1996).

■ The Act shields governmental entities from suit on tort claims, 14 M.R.S.A. § 8103(1), subject to limited exceptions that we have narrowly construed. Section 8104–A, setting forth the exceptions, provides in pertinent part:

    **1. Ownership; maintenance or use of vehicles, machinery and equipment.** A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:

    A. Motor vehicle . . .

    B. Special mobile equipment . . .

    C. Trailers . . .

    D. Aircraft . . .

    E. Watercraft . . .

    F. Snowmobiles . . . and

    G. Other machinery or equipment, whether mobile or stationary. . . .

    **2. Public Buildings.** A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building.

■ We agree with the trial court that, contrary to the Town's contention, the transfer station is a public building for purposes of the Act. The transfer station is permanent, fully enclosed and completely open to the public and falls squarely within the public building exception to sovereign immunity. *Cf. Lovejoy v. State,* 544 A.2d 750 (Me.1988) (prefabricated, air transportable underground assault shelter located on state-owned military training grounds is not a public building within the purview of the Act). We also reject the Town's contention that this is a "failure to supervise" case controlled by our holding in *ABT & A Co., Inc. v. State,* 644 A.2d 460 (Me.1994). The focus of this case is on the operation of the transfer station, not the supervision of the patrons of the facility. *See Lynch v. Town of Kittery,* 677 A.2d 524, 525 (Me.1996) (failure to lock doors at high school is negligent operation of public building not negligent supervision of students).

The limited waiver of sovereign immunity is curtailed by section 8104–B(3), that provides in pertinent part:

    Notwithstanding section 8104–A, a governmental entity is not liable for any claim which results from:

    . . . .

    **3. Performing discretionary function.** Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid. . . .

■ In *Darling v. Augusta Mental Health Inst.,* 535 A.2d 421, 426 (Me.1987), we adopted the following four factors considered by a number of courts in other jurisdictions in determining whether the conduct at issue constitutes a governmental discretionary function:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act omission or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

(Citations omitted). This formula recognizes that discretionary function immunity serves the important purpose of separation of power by preventing the judicial branch from entertaining tort actions as tools for manipulating important policy decisions that have been committed to coordinate branches of government. *See* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 131, at 1039 (5th ed.1984). If "decisions involve the dilemma of policy intended to be resolved by the legislative or executive branches, the

courts will refuse to review them in tort actions. ..." *Id.* at 1052. *See also Dalehite v. United States,* 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–68, 97 L.Ed. 1427 (1953) ("[A]cts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.").

■ Nevertheless, "discretionary immunity ... was not designed to cloak the ancient doctrine of sovereign immunity in modern garb." *Nelson by and through Stuckman v. Salt Lake City,* 919 P.2d 568, 575 (Utah 1996). In cases where the questioned conduct "has little or no purely governmental content but instead resembles decisions or activities carried on by people generally, there is an objective standard for judgment by the courts" and the doctrine of discretionary immunity does not bar the action. Keeton *et al.,* at 1065. A broader formulation of the doctrine threatens to render any function involving a choice discretionary, thereby functionally eliminating the limited waiver of sovereign immunity provided by the Act. *See Ransom v. City of Garden City,* 743 P.2d 70, 72–73 (Idaho 1987) (discretionary function immunity "does not include functions which involve any element of choice, judgment or ability to make responsible decisions; otherwise every function would fall within the exception").

■ The record reveals no Town or other governmental policy on which the function of the attendant, relating to his decisions regarding the operation of the back-up area of the transfer station, can be grounded. The Town does not, and on this record cannot, contend that the decisions of the transfer station attendant, relative to the back-up area of the transfer station were "essential to the realization or accomplishment" of any governmental policy program or objective. *Cf. Miller v. Szelenyi,* 546 A.2d 1013, 1021 (Me.1988) (proper care and treatment of mentally retarded is basic state policy). Nor did the actions require the "exercise of basic policy evaluation, judgment, and expertise" by the attendant. Whether to close an already installed safety gate, help patrons position their vehicles or give any warning are typical of day-to-day decisions generally made by all persons and cannot be said to be

rooted in basic governmental policy. *See Nelson by and through Stuckman v. Salt Lake City,* 919 P.2d at 575–76 (failure to maintain state-erected fence between a river and park did not involve basic governmental policy making function).

The Town's reliance on our decision in *Moore v. City of Lewiston,* 596 A.2d 612 (Me.1991), is misplaced. Moore was a passenger in a car that was stopped by the Lewiston police in the early morning hours. When taken into custody, the driver stated he did not want Moore to operate his vehicle. While walking toward her home, Moore was injured by two unknown assailants. She sought damages from the Town for her injuries alleged to have resulted from the officers' negligent failure to offer to transport her to her home. The Lewiston Police Department Manual set forth a policy against providing citizens with transportation in a police vehicle except when necessary to accomplish a police purpose and when done in conformance with departmental policy or at the discretion of a commanding officer, immediate supervisor or the communication center. In affirming the summary judgment in favor of the Town we stated that "because the officers were required to use their judgment while acting in furtherance of a departmental policy restricting the use of police vehicles to transport private citizens," the officers were exercising a discretionary function entitled to immunity. Accordingly, *Moore* does not control. *See United States v. Gaubert,* 499 U.S. 315, 324–25, 111 S.Ct. 1267, 1274–75, 113 L.Ed.2d 335 (1991) ("When established governmental policy, as expressed or implied by statute, regulation or agency guidelines, that allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.").

Because the alleged conduct of the attendant did not involve the formulation of a basic governmental policy nor was it pursuant to a

statute, regulation or guideline that expressly or impliedly would presumptively ground it in governmental policy, section 8104(B)(3) of the Act does not apply. Accordingly, the trial court erred by granting the Town's motion for summary judgment based on that provision.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.