1997 ME 186

**Janet BERARD**

v.

**Daniel McKINNIS, et al.**

Supreme Judicial Court of Maine.

Argued April 10, 1997.
Decided Aug. 11, 1997.

---

4. "The life of the law has not been logic: it has been experience." O.W. Holmes, THE COMMON LAW 1, 37 (1881).

Mark S. Kierstead (orally), Waterville, for plaintiff.

Frederick C. Moore (orally), Thomas R. Kelly, Robinson, Kriger & McCallum, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Daniel McKinnis and China Rescue, Inc., defendants in a defamation suit filed against them by Janet Berard, appeal from the judgment of the Superior Court (Kennebec County, *Alexander, J.*) denying their motion for a summary judgment.[1] On appeal, they contend that they are immune under the provisions of the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1980 and Supp.1996). We agree and vacate the judgment.

I.

[¶ 2] On January 29, 1993, Janet Berard, a member of China Rescue, Inc., a volunteer

1. Denial of a motion for a summary judgment on the ground of immunity is appealable as an exception to the final judgment rule. *Pepperman v. Barrett,* 661 A.2d 1124, 1126 n. 1 (Me.1995).

emergency medical services (EMS) organization, was in her private vehicle with her husband when the rescue service was dispatched to a medical call at the home of Berard's uncle. She responded to the call, as did four other China Rescue crew members, including China Rescue's president, Daniel McKinnis. The four crew members later reported having smelled alcohol on Berard's breath while at the call. Two of the four also reported that Berard's behavior seemed different than usual and that she was talking loudly.

[¶ 3] On February 5, 1993, McKinnis wrote a letter to Berard advising her of the allegations that she had alcohol on her breath at the January 29 call and placing her on suspension. McKinnis sent a copy of the February 5 letter to Mark Belserene, regional coordinator for the Kennebec Valley EMS. Berard wrote a letter to Belserene on February 11 denying that she had responded as a crew member to the January 29 call and asserting that she responded "as a family member of the patient who is my uncle."[2] She also denied that she had alcohol on her breath and stated that she had taken Nyquil before the call.

[¶ 4] Berard requested a hearing before the China Rescue executive board. At the March 1993 hearing, Berard was present and was represented by counsel. Mark Belser-

ene from the Kennebec County EMS Council was also present. At the meeting Berard reiterated her position that she was at the January 29 call in a private capacity.

[¶ 5] On May 5, 1993, McKinnis sent a letter to Berard advising her that China Rescue was withdrawing its sponsorship of her EMS license. The letter stated, in pertinent part: "The reason for termination is as follows; violation of MEMS Law, Sec. 12 Art. 6(b)[3]; less than truthful statements were made to the China Rescue Executive Board and failure to comply with the China Rescue Boards agreed solution to your problem situation." McKinnis sent a copy of the letter to Drexell White at Maine EMS.

[¶ 6] In September 1994 Berard filed the present action against McKinnis and China Rescue alleging slander and slander per se against McKinnis and the liability of China Rescue for McKinnis's actions pursuant to the doctrine of respondeat superior. Both defendants filed a motion for a summary judgment, pleading, *inter alia*, immunity pursuant to the Maine Tort Claims Act.[4] The court denied the motion, and the defendants now present this interlocutory appeal.

## II.

[¶ 7] McKinnis contends that he is immune from liability for acts that were his discretionary function[5] as president of China

---

**2.** Berard signed the ambulance run report as the "crew member in charge." Her EMS license number, 12922, is also listed on the report under the heading "crew license numbers."

**3.** Maine EMS Rules, section 12(A) (1992) reads in pertinent part:

> The Board may refuse to issue or renew a license, or may modify, suspend, or revoke a license, if an applicant or licensee engages in any of the following conduct:
> . . .
> 6. Acting unprofessionally. Unprofessional conduct includes:
> . . .
> (b) Addiction to a drug, including alcohol or responding to the scene of a call while under the influence of intoxicating, narcotic, hypnotic or other substances, whether or not the use of such substances is habitual.

**4.** Because we conclude that both McKinnis and China Rescue are immune pursuant to the Maine Tort Claims Act, we do not address the remainder of their contentions.

**5.** 14 M.R.S.A. § 8111 provides, in pertinent part:

> **1. Immunity.** Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
> . . .
> C. Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;
> . . . .
> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, including police officers and governmental employees involved in child welfare cases, who are required to exercise judgment or discretion in performing their official duties.

Rescue. Specifically, he contends that it was a discretionary function to send to EMS[6] a copy of his letter terminating Berard from the rescue service.

[¶ 8] China Rescue is required by Maine EMS Rules to notify Maine EMS when it terminates sponsorship of one of its crew members: "A service who terminates the sponsorship of a licensee shall notify Maine EMS of such termination as soon as possible." Maine EMS Rules, § 6(F)(2). McKinnis attested in his affidavit that he forwarded to Drexell White of Maine EMS a copy of the letter he had sent to Berard because he was required to notify Maine EMS of the termination of China Rescue's sponsorship of Berard's EMS license. The question we must resolve is whether by reporting China Rescue's termination of its sponsorship of Berard's license to Maine EMS, including the reasons for that termination, McKinnis was performing a discretionary function.

[¶ 9] We have recognized four factors for consideration in determining whether an action is encompassed within a discretionary function:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course of direction of the policy, program or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agent involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Adriance v. Town of Standish,* 687 A.2d 238, 240 (Me.1996). Discretionary function immu-

nity "insulates from personal liability a government employee who has been legislatively authorized to perform some discretionary function and 'has acted, or has failed to act, pursuant to that authorization.'" *Darling v. Augusta Mental Health Inst.,* 535 A.2d 421, 425 (Me.1987) (quoting *True v. Ladner,* 513 A.2d 257, 260 (Me.1986)).

[¶ 10] Reviewing these factors in the instant case, we conclude that McKinnis is entitled to discretionary function immunity for the act of reporting China Rescue's revocation of Berard's license sponsorship to Maine EMS.

(1) Disciplining ambulance crew members who violate Maine EMS rules involves a basic governmental policy, program or objective. The "key elements" of the emergency medical services are "prompt, efficient and effective emergency medical care, a well-coordinated trauma system, effective communication between prehospital care providers and hospitals and the safe handling and transportation of the sick and injured...." 32 M.R.S.A. § 81–A (1988 & Supp.1996) (Statement of Purpose, Maine Emergency Medical Services Act of 1982). The required reporting of the withdrawal of sponsorship of a crew member's EMS license to Maine EMS advances Maine EMS's policy goals.

(2) Because the provision of emergency medical care requires competent care providers, Maine EMS requires EMS providers to report withdrawal of sponsorship of EMS licenses in order to maintain a "well-coordinated trauma system." *Id.* McKinnis's report to Maine EMS of China Rescue's withdrawal of Berard's sponsorship is a "decision essential to the realization or accomplishment of that policy." *See Adriance,* 687 A.2d at 240.

(3) The decision to report termination of license sponsorship because of a violation of Maine EMS rules is a decision that requires "basic policy evaluation, judgment, and ex-

---

**6.** "Maine EMS" refers to Maine Emergency Medical Services, which consists of the Emergency Medical Services Board, the emergency medical services director and Maine EMS staff, all under the auspices of the Department of Public Safety. The board is "responsible for carrying out the purpose" of the Maine Emergency

Medical Services Act of 1982, 32 M.R.S.A. §§ 81–94. 32 M.R.S.A. § 83 (16–A) (Supp.1996). "The board shall adopt the forms, rules, procedures, testing requirements, policies and records appropriate to carry out the purposes, requirements and goals of this chapter." 32 M.R.S.A. § 84(1)(A) (Supp.1996).

pertise" on the part of McKinnis, acting on behalf of China Rescue. *See id.*

(4) McKinnis possessed the requisite statutory authority to make the challenged decision. Because Maine EMS rules require an application for a Maine EMS license or for license renewal be "signed by the applicant and by an authorized representative of the service sponsoring the applicant for license," Maine EMS Rules § 6(D)(6)(a), and because the "[f]ailure to maintain sponsorship invalidates the license," Maine EMS Rules § 6(F), McKinnis was empowered to determine which EMS licenses China Rescue would sponsor. Further, McKinnis was required by Maine EMS rules to report his decision to Maine EMS. "A service who terminates the sponsorship of a licensee shall notify Maine EMS of such termination as soon as possible." Maine EMS Rules § 6(F)(2).

[¶ 11] Although Maine law did not require McKinnis to provide Maine EMS with the reasons for the termination of the sponsorship of Berard's license, McKinnis's decision to state the reasons for the termination is so closely tied to the discretionary function of reporting termination that McKinnis is protected by discretionary function immunity. In that sense his conduct is distinguishable from the conduct at issue in *Rippett v. Bemis,* 672 A.2d 82 (Me.1996). In *Rippett,* we concluded that although a deputy sheriff's investigation of a crime was a discretionary function, his "public statements concerning the results of that investigation . . . were not essential to accomplish any basic governmental policy, program or objective and in fact violated a written policy of the York County Sheriff's Department," and thus the deputy was not immune from a defamation suit. *Id.* at 88. In the instant matter, McKinnis was required by law to report to Maine EMS his decision to withdraw sponsorship of Berard's license. His decision to send to Maine EMS a copy of the letter he sent to Berard stating the reasons for the withdrawal was "reasonably encompassed by the duties" of his position as China Rescue's president. *See* 14 M.R.S.A. § 8111.[7]

### III.

▮▮▮▮ [¶ 12] Berard does not dispute that China Rescue is a "governmental entity" for purposes of the Act[8]; rather, she contends that China Rescue is covered by the liability insurance policy procured by the Town of China and thus has waived immunity provided by the Act.[9] China Rescue did not, for the time period pertinent to this matter, have its own liability insurance coverage.[10] China Rescue bears the burden of proving that it does not have insurance coverage bearing upon Berard's claim. *Danforth v. Gottardi,* 667 A.2d 847, 848 (Me. 1995).

The Town's liability insurance policy read, in pertinent part:

> from suit on any and all tort claims seeking recovery of damages. . . ." 14 M.R.S.A. § 8103(1) (1980).

---

7. Berard also argues that immunity pursuant to the Maine Tort Claims Act is not available to McKinnis because he acted in bad faith in forwarding the copy of the license sponsorship termination letter to Drexell White. Because we have determined that McKinnis's conduct is a proper discretionary function, 14 M.R.S.A. § 8111(C), we need not address Berard's bad faith argument. The bad faith exception to sovereign immunity is found in subparagraph E of section 8111. Because McKinnis is entitled to absolute immunity under subparagraph C, this bad faith proviso does not apply. *See Dall v. Caron,* 628 A.2d 117, 119 (Me.1993).

8. " 'Political subdivision' means . . . any emergency medical service." 14 M.R.S.A. § 8102(3) (Supp.1996).
" 'Governmental entity' means and includes the State and political subdivisions as defined in subsection 3." 14 M.R.S.A. § 8102(2) (1980). "Except as otherwise expressly provided by statute, all governmental entities shall be immune

9. 14 M.R.S.A. § 8116 (Supp.1996) provides that when a governmental entity procures liability insurance coverage, "[i]f the insurance provides protection in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage." Such a waiver of immunity would expose China Rescue to liability despite McKinnis's personal immunity from liability. "Under the doctrine of respondeat superior, a principal has no defense based on an agent's immunity from civil liability for an act committed in the course of employment." Restatement (Second) of Agency § 217(b)(ii) (1958).

10. The Town added China Rescue to its insurance policy on January 1, 1995.

Section II—Who is an Insured:

1.  If you are designated in the Declarations as:

...

   c.  An organization other than a partnership or joint venture, you are an insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

   a.  Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

...

4.  Any organization you newly acquire or form ... over which you maintain ownership or majority interest....

The policy also contained a "governmental subdivisions" modification to the definitions section:

   1.  Who is an insured (Section II) is amended to include as an insured any elective or appointive officer or a member of any board or commission or agency of yours while acting within the scope of their duties as such.

 [¶ 13]  When a contract is unambiguous, the construction of contract language is a question of law.  *Maine Mutual Fire Ins. Co. v. Grant*, 674 A.2d 503, 505 (Me.1996).  It is clear from the Town's 1993 policy that China Rescue is not an "insured."  China Rescue is an independent, incorporated, non-profit emergency medical service licensed by the State.  Its volunteers are not employees of the Town, and the service is not dispatched by the Town.  Although Berard contends that China Rescue can be considered as an "agent" of the Town, the fact that the Town provides financial support for China Rescue does not involve the exercise of such control by the Town that would make China Rescue its agent.  *See Bonk v. McPherson*, 605 A.2d 74, 78–79 (Me.1992); Restatement (Second) of Agency § 1 (1958).  China Rescue was not, in 1993 and 1994, covered by the Town of China's liability insurance, and thus China Rescue is immune from suit.

## IV.

 [¶ 14]  "In the absence of [a] factual contradiction, summary judgment is 'intended to permit *prompt disposition* of cases in which the dispute is solely dependent on the resolution of an issue of law,' *Tisei v. Town of Ogunquit*, 491 A.2d 564, 568 (Me.1985), and entitlement to discretionary immunity is such an issue of law."  *Polley v. Atwell*, 581 A.2d 410, 413 (Me.1990).  Because we have determined that both McKinnis and China Rescue are immune under the MTCA, we conclude that the Superior Court erred as a matter of law by denying the defendants' motion for a summary judgment.

The entry is:

Judgment vacated.  Remanded to the Superior Court with direction to enter a judgment in favor of Daniel McKinnis and China Rescue, Inc.

