1998 ME 9

**Jeffrey A. GROSSMAN**

v.

**Don E. RICHARDS and the City of Westbrook.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1998.

Decided Jan. 13, 1999.

Robert Edmond Mittel (orally), Mittel, Asen, Hunter & Cary, LLC, Portland, for plaintiff.

Martha C. Gaythwaite (orally), Friedman, Babcock & Gaythwaite, Portland, for Richards.

Michael D. Cooper, Westbrook, for City of Westbrook.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

RUDMAN, J.

[¶ 1]   Jeffrey A. Grossman (Grossman) appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J*.) in favor of Don E. Richards (Richards).   Grossman contends that the court erred by concluding that: (1) Richards was immune from liability under the Maine Tort Claims Act (MTCA);[1] and (2) the City of Westbrook (City) did not waive Richards' immunity by purchasing insurance on his

1.  The Maine Tort Claims Act is codified in 14   M.R.S.A. §§ 8101–18 (1980 & Supp.1998).

behalf. We disagree and affirm the judgment.

[¶ 2] Grossman served as Administrator for the City of Westbrook until he resigned in June 1996. Grossman commenced this defamation and false light invasion of privacy action against Richards,[2] based on comments Richards made during a televised Westbrook City Council meeting on August 5, 1996. Richards was acting as a City Alderman and the City Council President at the time he made the allegedly defamatory comments. Richards moved for a summary judgment pursuant to M.R. Civ. P. 56(b) on the ground that no genuine issue of material fact existed and Grossman failed to establish the elements of his claims. After the trial court granted a summary judgment in favor of Richards, this appeal ensued.

[¶ 3] We review a grant of a summary judgment *de novo* for errors of law. *See Rippett v. Bemis*, 672 A.2d 82, 85 (Me. 1996). Summary judgment is appropriate when a defendant is immune from tort liability. *See Moore v. City of Lewiston*, 596 A.2d 612, 614 (Me.1991). We have recognized that "immunity is an issue distinct from liability." *Id.* (quoting *Polley v. Atwell*, 581 A.2d 410, 412 (Me.1990)). "Whether a defendant is entitled to governmental immunity is a question of law that may be resolved by a summary judgment in the absence of factual contradiction." *Dubail v. Dep't of Transp.*, 1998 ME 126, ¶ 7, 711 A.2d 1301, 1303. Therefore, the trial court did not erroneously grant a summary judgment if Richards was immune from liability under the MTCA. *See id.*

[¶ 4] The MTCA grants absolute immunity to governmental employees for "[p]erforming or failing to perform any discretionary function or duty." 14 M.R.S.A. § 8111(1)(C) (1980 & Supp.1998). Such immunity is "applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized . . . ." 14 M.R.S.A. § 8111(1). Since Grossman conceded that Richards' conduct was a "discretionary act," the only issue is whether Richards' duties "reasonably encompassed" his conduct. *Id.*

[¶ 5] Grossman argues that Richards' discretionary act was not "reasonably encompassed by his duties." The Legislature added the "reasonably encompassed" language to section 8111(1) to clarify that an employee does not need specific written authorization by rule or statute, in order for discretionary immunity to apply. *See* L.D. No. 2443, 113th Leg., 2d Sess. 16 (1988). The statement of fact accompanying the bill that resulted in the addition of the "reasonably encompassed" language in section 8111(1) states:

> [T]he additional language at the end of Title 14, section 8111, subsection 1, paragraph E is intended to overrule the statement in *True v. Ladner*, 513 A.2d 257 (Me.1986), that discretionary immunity is only available when the exercise of discretion is authorized by a specific statute or rule. To perform their jobs effectively, many government employees are required to exercise their discretion in areas which are not specifically governed by a detailed statute. Accordingly, discretionary immunity should exist whenever the activity in question is in fact discretionary and is important to the functioning of the governmental activity involved.

L.D. No. 2443, 113th Leg., 2d Sess. 16 (1988).

[¶ 6] As we stated in *Darling v. Augusta Mental Health Inst.*, the purpose of the discretionary function immunity is to preserve "independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 425 (Me.1987) (quoting *Restatement (Second) of Torts* § 895D comment b (1979)). "[T]ort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function." *Id.*

---

**2.** Grossman also filed suit against the City under a vicarious liability theory. However, the court granted the City's motion for a summary judgment and Grossman later withdrew his appeal with respect to the City.

According to the statement of fact accompanying the aforementioned bill:

> [T]he immunities contained in Title 14, section 8111 are intended to serve important governmental purposes. Government officials are frequently required as part of their jobs to take actions that have serious consequences for the individuals affected.... If these government officials were faced with the constant possibility of personal liability, the inevitable result would be that they would be hesitant to take necessary enforcement action and the public interest would suffer.

L.D. No. 2443, 113th Leg., 2d Sess. 15 (1988).

[¶ 7] We have identified four factors to consider in determining "whether an action is encompassed within a discretionary function":

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program[,] or objective?
>
> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective[,] as opposed to one which would not change the course or direction of the policy, program[,] or objective?
>
> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?
>
> (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Berard v. McKinnis*, 1997 ME 186, ¶ 9, 699 A.2d 1148, 1151 (quoting *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me.1996)).

[¶ 8] The trial court analyzed these four factors as follows:

> [(1) Richards'] statements involved a basic governmental objective, namely, the proper custody and distribution of the public's money. [(2)] Questioning whether there was a conflict of interest involved in the distribution of public money is essential to the realization of the function of properly distributing public money. [(3)] Richards's [*sic*] statements required basic policy evaluation, judgment, and expertise by Richards. [(4)] Finally, Richards possessed the requisite lawful authority, as an alderman voting to approve an appropriation, to question the possible conflict of interest involved in the distribution of public money. Although Richards's [*sic*] comments appear ill-informed, ill-advised, and otherwise actionable, they do not exceed the permissible bounds of discretion allowed by § 8011(1)(C).

The trial court concluded that "Richards performed a discretionary function" within the meaning of section 8111. Richards' duties "reasonably encompassed" his discretionary act of pointing out a potential conflict of interest regarding the distribution of public money. *See* 14 M.R.S.A. § 8111(1). Therefore, Richards is entitled to discretionary function immunity under the MTCA.

[¶ 9] Grossman asserts that the trial court erred in concluding that the "bad faith" provision in section 8111(1)(E) does not apply to discretionary act immunity under section 8111(1)(C).[3] However, we addressed this exact issue in *Dall v. Caron* and held that the "bad faith proviso" of subparagraph E does not apply to the remainder of section 8111(1). *See Dall v. Caron*, 628 A.2d 117, 119 (Me. 1993). We stated:

> The proviso contained in subparagraph E that excludes actions in bad faith is limited to that subparagraph's broad grant of immunity for "any intentional act or omission within the course and scope of employment." The immunity granted in the more limited circumstances described in subparagraphs A through D is absolute and not qualified by the bad faith proviso in subparagraph E.

*Id.* (footnote omitted).

[¶ 10] In *Berard v. McKinnis*, we recently affirmed the decision in *Dall* that the "bad

---

3. Subparagraph E of section 8111(1) provides employees of governmental entities with absolute immunity for "[a]ny intentional act or omission within the course and scope of employment; *provided* that such immunity shall not exist in any case in which an employee's actions are found to have been in *bad faith*." 14 M.R.S.A. § 8111(1)(E) (1980 & Supp.1998) (emphasis added).

faith proviso" in subparagraph E does not apply to the absolute immunity that subparagraphs A through D provide. *See Berard,* 1997 ME 186, ¶ 11 n. 7, 699 A.2d at 1152 n. 7. In rejecting the plaintiff's claim that the "bad faith proviso" prevented discretionary function immunity under subparagraph C, we stated:

> [The plaintiff] argues that [MTCA] immunity . . . is not available to [the defendant] because he acted in bad faith . . . . Because we have determined that [the defendant's] conduct is a proper discretionary function, [pursuant to] 14 M.R.S.A. § 8111(1)(C), we need not address [the plaintiff's] bad faith argument. The bad faith exception to sovereign immunity is found in subparagraph E of section 8111. Because [the defendant] is entitled to absolute immunity under subparagraph C, this bad faith proviso does not apply.

*Id.* (citing *Dall,* 628 A.2d at 119).

■ [¶ 11] Grossman argues that we should overturn *Dall* and *Berard,* but fails to support his contentions with timely or relevant precedent. "The meaning of statutory language is a question of law." *Cook v. Lisbon Sch. Comm.,* 682 A.2d 672, 676 (Me. 1996). In *Cook,* we stated:

> In construing a statute we look first to the plain meaning of the statutory language to give effect to legislative intent, and if the meaning of the statute is clear on its face, then we need not look beyond the words themselves. Thus, if the text of the stat-

ute given its plain meaning answers the interpretative question raised by the parties, the language must prevail and no further inquiry is required.

*Id.* (citations omitted).

■ [¶ 12] On its face, section 8111(1) provides "absolute immunity" for employees of governmental entities under subparagraphs A through E.[4] *See* 14 M.R.S.A. § 8111(1). Subparagraph E provides absolute immunity for "[a]ny intentional act or omission within the course and scope of employment" that an employee did not commit in bad faith. 14 M.R.S.A. § 8111(1)(E).[5] In other words, section 8111(1) provides absolute immunity for, *inter alia,* a government employee's intentional, good-faith acts or omissions.[6] *See id.*

■ [¶ 13] Since the meaning of section 8111(1) is clear on its face, the language prevails, and we indulge in no further inquiry. *See Cook,* 682 A.2d at 676. Our decisions in *Dall* and *Berard* were based on the plain meaning of the MTCA. *See Dall,* 628 A.2d at 119; *Berard* 1997 ME 186, ¶ 11 n. 7, 699 A.2d at 1152 n. 7. Furthermore, we strictly construe exceptions to governmental immunity under the MTCA. *See Petillo v. City of Portland,* 657 A.2d 325, 327 (Me. 1995). Therefore, since the trial court's conclusions clearly comport with both the statute and our recent decisions, the court did not commit an error of law in granting a summary judgment in favor of Richards.[7]

---

4. The statement of fact accompanying the bill that resulted in an amendment to section 8111(1) stated:

> The legislative history of the [MTCA] in 1977 demonstrates that the discretionary immunity was intended to be absolute. To the extent that *MacKerron v. Madura,* 474 A.2d 166 (Me. 1984), can be read to suggest that only a qualified immunity was intended, it is incorrect. The addition of language specifying absolute immunity in the initial sentence of Title 14, section 8111, subsection 1, is intended to solve this problem.

L.D. No. 2443, 113th Leg., 2d Sess. 17 (1988).

5. Section 8111(1) and subparagraph E state, in pertinent part:

> [E]mployees of governmental entities shall be *absolutely immune* from personal civil liability for . . . . *[a]ny intentional act or omission within the course and scope of employment; provid-*

ed that *such immunity* shall not exist in any case in which an employee's actions are found to have been in *bad faith.*
14 M.R.S.A. § 8111(1) (1980 & Supp.1998) (emphasis added).

6. Grossman contends that "absolute immunity" for good faith acts "makes no sense." Grossman claims that "[b]y definition, absolute immunity cannot have a component of good faith." Grossman argues that the Legislature was confused in its juxtaposition of the term "absolute immunity" with a "good faith" requirement. However, as we stated in *Dall:* "The Legislature understood the distinction between qualified and absolute immunity." *Dall v. Caron,* 628 A.2d 117, 119 n. 2 (Me.1993).

7. Had the Legislature intended for the "bad faith proviso" to apply to subparagraphs A through D, it would have been a simple matter to draft

[¶ 14] Finally, Grossman asserts that the City waived Richards' immunity by purchasing insurance on Richards' behalf. Section 8116 of Title 14 provides that: "The *legislative or executive body or any department of the State or any political subdivision* may procure insurance against liability for any claim against it or its employees for which immunity is waived under this chapter or under any other law." 14 M.R.S.A. § 8116 (1980 & Supp.1998) (emphasis added). However, "[i]f the insurance provides coverage in areas where the governmental entity is immune, *the governmental entity shall be liable* in those substantive areas" (although only to the limits of coverage). *Id.* (emphasis added). Section 8116

only affects the liability of governmental entities, and does not waive the immunity of the individual insured employees. *See id.; Moore v.. City of Lewiston,* 596 A.2d 612, 616 (Me.1991).[8] Therefore, Grossman's assertion is without merit.

The entry is:

Judgment affirmed.

---

section 8111(1) in a manner that clearly indicated such intent. In order for us to justify the interpretation that Grossman advocates, we would need to ignore the structure of section 8111 and look beyond the plain meaning of the statute as written. However, as a basic principle of statutory construction, we refuse to look beyond the words of a statute when the meaning is clear on its face. *See Cook v. Lisbon Sch. Comm.,* 682 A.2d 672, 676 (Me.1996).

8. In *Moore* we stated:

[The third paragraph of] [s]ection 8116 provides that a governmental entity "may purchase insurance or may self-insure on behalf of its employees to insure them against any

personal liability for which a governmental entity is obligated or entitled to provide defense or indemnity under section 8112." However, unlike the parallel provision in [the first paragraph of] section 8116 ,regarding governmental entities, which states that "the *governmental entity* shall be liable ... to the limits of the insurance coverage" (emphasis added), *this provision does not purport to waive the personal immunity of insured employees.* Thus, regardless whether the City's insurance coverage 'extended to the defense or indemnity of the police officers, *their personal immunity from liability could not have been waived. Moore v. City of Lewiston,* 596 A.2d 612, 616 (Me.1991) (quoting 14 M.R.S.A. ¶ 8116) (emphasis added; footnote omitted).