STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. CV-00-136
                                                  SKS - ...  ...

SUSAN D. PHILBRICK,

        Plaintiff

    v.                                            DECISION ON MOTIONS
                                                  FOR SUMMARY JUDGMENT

AMOS R. COURTNEY and
MAINE STATE POLICE/
DEPARTMENT OF PUBLIC
SAFETY,

        Defendants and
        Crossclaimants

    v.

WILLIAM FRANCIS,

        Crossclaim Defendant
        and Plaintiff

    This matter comes before the court on the motions of both defendant Maine

State Police/Department of Public Safety (State) and third-party defendant William

Francis's for summary judgment. The court has reviewed the statements of

material facts and responding statements of all the parties. Although there are

differences of opinion with regard to detail, there appear to be no disputes with

regard to facts which are material to the motions. The necessary material facts are

set forth below.

## Facts

    On September 6, 1999, plaintiff Susan Philbrick was a passenger on the back of

1

a motorcycle driven by defendant Amos Courtney. Philbrick and Courtney had been riding with a small group of other motorcyclists, including William Francis. At some point, Francis sped ahead of Courtney and Philbrick and, while approaching the town of Albion, Francis crossed paths with Maine State Police Trooper Mark Nickerson. Nickerson was driving his cruiser in the opposite direction. The trooper made a visual estimate, confirmed by his radar, that Francis was seriously exceeding the speed limit. He then decided to make a u-turn and pursue Francis to enforce the traffic law violation As Nickerson was completing the turn, the Courtney/Philbrick motorcycle crashed into the rear of the cruiser. Unbeknownst to Nickerson, Francis had noticed the cruiser as it passed and had pulled to the side of the road anticipating that the trooper would follow him.

Philbrick filed suit against Courtney and the State seeking damages for negligence.[1] The State then filed a crossclaim against Courtney for negligence, indemnification and contribution. Courtney crossclaimed against the State for negligence and contribution, and the State then brought a third-party complaint against Francis for negligence, indemnification and contribution. Francis responded by crossclaiming against the State for indemnification and contribution. The State now moves for summary judgment on the claims asserted by Philbrick and Courtney on grounds of immunity under the Maine Tort Claims Act. Francis also moves for summary judgment claiming he owed no legal duty to Philbrick and

---

[1] For whatever reason, Philbrick chose not to bring suit against the trooper. Apparently, Philbrick relies on a theory of *respondeat superior*.

Courtney and as such he cannot be held liable for contribution to the State for any awards to them.

## Discussion

**I. State's Motion for Summary Judgment.**

The State argues that it is immune from suit under the Maine Tort Claims Act. 14 M.R.S.A. §§ 8101-8118 (Supp. 2000). The Act provides governmental immunity from suit subject to four limited exceptions. Section 8104-A sets forth the exceptions including:

> Except as specified in section 8104-B, a governmental entity is liable for property damage, bodily injury or death in the following instances.
> 1. Ownership; maintenance or use vehicles, machinery or equipment. A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:
> A. Motor vehicle . . .

However, section 8104-B provides:

> Notwithstanding section 8104-A, a governmental entity is not liable for any claim which results from:
>
> . . .
>
> 3. Performing discretionary function. Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused and whether or not any statute, charter, ordinance, order, resolution or policy under which the discretionary function or duty is performed is valid or invalid.

Whether the defendant is entitled to governmental immunity is a question of law that may be resolved by a summary judgment in the absence of factual contradiction. *See Dubail v. Dep't of Transportation*, 1998 ME 126, ¶ 7, 711 A.2d 1301. Likewise, whether a defendant is entitled to discretionary function immunity

3

is a question of law that may be resolved by summary judgment. *Grossman v. Richards*, 1999 ME 9, ¶ 3, 722 A.2d 371. Here the State argues that although the accident which forms the basis for the suit involved the use of a motor vehicle owned by the State, the act being performed by the operator of the vehicle -- Trooper Nickerson -- was a discretionary function which would trigger the statutory immunity.[2]

The Law Court has adopted a four-factor test when determining whether the governmental activity in question constitutes a discretionary function.

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?
> (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program or objective?
> (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment and expertise on the part of the governmental agency involved?
> (4) Does the governmental agency involved possess the requisite constitutional, statutory or lawful authority and duty to do or make the challenged act, omission, or decision?

*Roberts v. Maine*, 1999 ME 89, ¶ 8, 731 A.2d 855; *Darling v. Augusta Mental Health Institute*, 535 A.2d 421, 426 (Me. 1987).[3] However, despite the assistance of this test, determining what is a discretionary act as opposed to a ministerial act still presents a challenge, as can be seen in three of the many cases in which our Law Court has

---

2 Discretionary immunity applies even when the government official is negligent in performing the discretionary duty. *See Bowen v. Dept. of Human Services*, 606 A.2d 1051, 1055 (Me. 1992).

3 The four-prong test appears to be appropriate regardless of whether the discretionary function immunity is being claimed by a government official (14 M.R.S.A. § 8111) or a government entity (14 M.R.S.A. § 8104-B(3)). The only difference is that under the Maine Tort Claims Act, liability is the rule and immunity the exception for employees, while immunity is the rule and liability is the exception for entities. *Carroll v. City of Portland*, 1999 ME 131, ¶ 4, n.3, 736 A.2d 279, 282, n.3.

4

addressed the issue.

In *Adriance v. Town of Standish*, 687 A.2d 238 (Me. 1996), the Law court considered a claim against the town for injuries the plaintiff suffered after falling into a trash hopper. The attendant at the transfer station had left the safety gate open in the area used by the plaintiff and in its motion for summary judgment the town argued that the attendant was performing a discretionary function, thereby entitling the town to immunity. The Law Court cautioned against giving discretionary immunity too broad a formulation, and stated the following:

> The record reveals no Town or other governmental policy on which the function of the attendant, related to his decisions regarding the operation of the backup area of the transfer station, can be grounded. The Town does not, and on this record, cannot contend that the decisions of the transfer station attendant, relative to the backup area of the transfer station were 'essential to the realization or accomplishment' of any governmental policy program or objective. . . . nor did the actions require the 'exercise of basic policy evaluation, judgment, and expertise' by the attendant. Whether to close an already installed safety gate, help patrons position their vehicles or give any warning are typical of the day-to-day decisions generally made by all persons and cannot be said to be rooted in basic governmental policy.

*Id.* at 241 (citations omitted). The court then concluded, "[b]ecause the alleged conduct of the attendant did not involve the formulation of a basic governmental policy nor was it pursuant to a statute, regulation or guideline that expressly or impliedly would presumptively ground it in governmental policy, section 8104(B)(3) of the Act does not apply." *Id.*

The second case example is *Roberts v. State of Maine*, 1999 ME 89, 731 A.2d 855. In this case the plaintiff sued both the State and a corrections officer as the result of a personal injury to the plaintiff's hand that was suffered while he was an

inmate at the Maine Correctional Center. The injury occurred when a cell door which the corrections officer was attempting to close slammed shut and trapped one of the plaintiff's fingers between the door jamb and the door. Applying the four-factor test set out above, the Law Court stated,

> In applying the four factors to the present case, there can be no dispute that corrections is a basic governmental program and that the supervision of inmates is essential to a corrections program. The supervision necessarily involves the exercise of judgment by corrections officers, including the discretionary decision of when to order an inmate to his cell. That discretionary decision also includes the shutting of a cell door when the prisoner has failed to shut it or the door has failed to shut.

*Id.* at ¶ 10. Thus, the Court determined that both the corrections officer and the State were immune under the Act.

Approximately two months after the *Roberts* decision,[4] the Law Court issued its decision in *Carroll v. City of Portland*, 1999 ME 131, 736 A.2d 279. In this case, the alleged tort was one of defamation stemming from what appears to have been a public service television program. The program gave the names and photographs of individuals for whom there were outstanding arrest warrants, and while transcribing a list of these names for the program, the officer mistakenly identified the plaintiff as being wanted for theft. Focusing on the preparation of the list, the Law Court characterized this activity as ministerial as opposed to discretionary, and

---

4 Both appeals had been argued on June 7, 1999.

vacated the summary judgment.[5]

Although the Law Court used the same four-factor test in each of the three cases noted above, harmonizing the cases takes some effort. The only relevant difference between the decision in *Adriance* to leave a safety gate open and the decision in *Roberts* to close a door is that the latter is made in the context of a fundamental government program (corrections) while the former was not. Likewise, comparing *Roberts* and *Carroll*, both cases involve fundamental government programs (corrections and law enforcement), but the court apparently felt that a decision to close a cell door was a discretionary decision while preparation of a list of names was not. The lesson seems to be in applying the four-factor test it is necessary to find both furtherance of a government policy and exercise of choice before immunity can be found.

Turning to the present case, the key question in the application of the four-factor test is the focus of the inquiry, i.e., what is the act that is being considered? The plaintiff would have the court look very narrowly at the physical act of turning the police cruiser around. The State argues for a broader focus to also incorporate the decision the trooper made to enforce the traffic laws. While it is true that every day drivers routinely turn their cars around, the trooper's turn must be examined in its full context. Trooper Nickerson would not have been turning his cruiser around

---

[5] The decision did generate a strong dissent from Chief Justice Wathen arguing that there are some ministerial acts to which immunity should apply if they are ancillary or incidental to a discretionary function. The dissent also emphasizes that it was the publication of the list of wanted individuals rather than the preparation of the list, which gave rise to the claimed tort of defamation.

if he had not already made the decision to follow and stop Francis for his traffic violation. Obviously, the trooper could not enforce the law without turning his cruiser around since he was headed in the opposite direction. Under these circumstances, the court concludes that the act of turning the cruiser around, though an every-day event when taken in isolation, is truly an integral part of the law enforcement decision made by Trooper Nickerson when examined in full context.

Applying the four factors, law enforcement, specifically enforcement of traffic laws, is a basic governmental policy and objective. Trooper Nickerson's act of turning his cruiser around was essential to the realization or accomplishment of the law enforcement effort since the trooper could not follow Francis without turning the cruiser. The decision to turn and follow Francis in order to enforce the traffic laws, which includes the integral act of turning the cruiser itself, was a discretionary decision made by Trooper Nickerson based upon his judgment and expertise. Finally, the Maine State Police and its troopers have the statutory authority and duty to enforce all laws including those designed to control vehicular traffic. 25 M.R.S.A. § 1502.

Since the court concludes that the State has met its burden of proof with regard to each of the four factors in the test for a discretionary act, the immunity provided in section 8104-B of the Act applies. The State's motion for summary judgment will granted.

**II.    Third-Party Defendant William Francis's Motion for Summary Judgment.**

8

The State has filed a third-party complaint naming William Francis as the defendant. The complaint included claims for damages as a result of negligence (Count I) and for indemnity and contribution with regard to any award made to plaintiff Philbrick (Count II). Since the court is granting the State's motion for summary judgment based upon its immunity under the Maine Tort Claims Act, Count II is moot and can be dismissed on that basis. With regard to Count I, none of the parties briefing and arguing the motion addressed the issue except perhaps in passing. Since the court has no basis to consider this count other than the bare pleadings, the motion will be denied as to Count II.

The entry will be:

(1)     The State's motion is granted and summary judgment will be entered for the State on all counts brought against it by plaintiff Philbrick and crossclaimant Courtney.

(2)     Defendant Francis' motion is dismissed as moot as to Count II and denied as to Count I of the State's crossclaim.

Dated: November 26, 2001

S. KIRK STUDSTRUP
JUSTICE, SUPERIOR COURT

9

Date Filed __7/18/00__     __Kennebec__     Docket No. __CV00-136__

County

Action __Auto Negligence__

Michael Rair, Esq.    **J. STUDSTRUP**
PO Box 2580 Bangor Maine 04402

**3rd Party: Maine State Police vs. Wm. Franci**

**Crossclaim:** Courtney vs. MSP/Public Safety

Susan D. Philbrook     vs.    Amos R. Courtney & Maine State Police/The

| Plaintiff's Attorney | Defendant's Attorney Dept. of Public Safety |
|---|---|
| -Francis X. Quinn, Jr., Esq.<br>82 Court St., P.O. Box 418<br>Portsmouth, NH 03892-0418<br>-J~~oseph A. Ritzo, Esq.~~<br>P~~O Box 658~~<br>P~~ortsmouth, NH 03802-0658~~ | -Christopher Taub, AAG   ..... (7/27/00)<br>6 State House Station     (ME.State Police<br>Augusta, Maine 04333-0006<br>-Joseph Jabar, Esq. (Amos Courtney indiv.)<br>1 Center Street     William Batten, Esq.<br>Waterville, Maine 04901<br>-William Kelleher, Esq. (Amos Courtney throug]<br>7 East Crescent Street     State Farm Ins.)<br>Augusta, Maine 04330 |

| Date of Entry | |
|---|---|
| 7/18/00 | Complaint Jury Trial Requested, filed. s/Ritzo, Esq.   s/Quinn, Jr., Esq.<br>Case File Notice   mailed to atty: |
| ******* | Jury fee paid. |
| 7/27/00 | Answer and Cross-Claim of Defendant Maine State Police, Department of<br>Public Safety, filed. s/Jernigan, AAG<br>Acceptance of Service, filed. s/Batten, Esq. |
| 8/2/00 | Withdrawal of Appearance by Christopher Jernigan, Esq., filed.<br>Entry of Appearance by Christopher Taub, AAG., filed. |
| 8/3/00 | Answer to Complaint of Amos Courtney, filed. s/Kelleher, Esq.<br>Defendant Amos Courtney's Answer to Crossclaim of Maine State Police/Department<br>of Public Safety, filed. |
| 8/3/00 | SCHEDULING ORDER, Studstrup, J.<br>"Scheduling Order filed. Discovery deadline is April 3, 2001."<br>Copies mailed to attys of record. |
| 8/4/00 | Original Summons, filed.<br>Acceptance of Service on Complaint by Christopher Jernigan, AAG. on 7/18/00,<br>filed. |
| 8/7/00 | Defendant Amos Courtney's Answer to Crossclaim of Maine State Police/Departmen<br>of Public Safety, filed. s/Kelleher, Esq.<br>Notification of Discovery Service, filed. s/Kelleher, Esq.<br>Defendant's Interrogatories Propounded to the Defendant Maine State Police/<br>Department of Public Safety and Defendant's First Request for Production of<br>Documents to the Defendant Maine State Police/Department of Public Safety<br>served on Christopher Jernigan, AAG. on 8/2/00. |
| 8/11/00 | Original Summons with return service made upon Amos R. Courtney, filed.<br>Acceptance of Service of Complaint, filed. s/Kelleher, Esq, |