2007 ME 68

Linda **RODRIGUEZ**

v.

**TOWN OF MOOSE RIVER et al.**

Supreme Judicial Court of Maine.

Argued: April 9, 2007.
Decided: May 29, 2007.

Jason M. Jabar, Esq. (orally), Jabar, Batten, Ringer & Murphy, Waterville, for plaintiff.

Edward R. Benjamin Jr., Esq., Rosie M. Williams, Esq. (orally), Thompson & Bowie, LLP, (for Town of Moose River), Anne M. Carney, Esq. (orally), Norman, Hanson & DeTroy, LLP, Portland, (for Elizabeth Bell), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] Elizabeth Bell, the former town clerk and tax collector of the Town of Moose River, appeals from a judgment entered in the Superior Court (Somerset County, *Mills, J.*) denying her motion for summary judgment in a negligence action filed by Linda Rodriguez. Rodriguez suffered injuries falling down the front steps of Bell's residence. Because Bell's residence is where she performed her duties as the town clerk, Bell argues that she is entitled to discretionary function and/or intentional act immunity pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8101–8118 (2006).

[¶ 2] Rodriguez cross-appeals from the Superior Court's grant of a summary judgment in favor of the Town of Moose River, arguing that there is a genuine issue of material fact as to whether Bell's residence may be considered a "public building" pursuant to the MTCA. We affirm the trial court's denial of Bell's motion for summary judgment, but vacate the entry of summary judgment in favor of the Town.

I. CASE HISTORY

[¶ 3] The parties' statements of material facts reveal no material disputes of fact with respect to the issues relevant to this appeal. The Town of Moose River has a population of approximately 230 residents. Like other small towns in Maine, the Town does not own an office building suitable for conducting Town business. As a condition for holding office, the Town required the town clerk to conduct official duties at his or her personal residence. The Town conducts its selectmen's meetings at a selectman's home. The annual town meeting occurs at a school in the neighboring Town of Jackman.

[¶ 4] In March 2000, Bell was elected town clerk and tax collector. Accordingly, she opened her home to the public to conduct Town business. The Town brought its computer, file cabinets, desk, and office supplies to Bell's home. Bell could request or use a Town charge card for other supplies as needed. Shortly after becoming the town clerk, Bell placed a sign on the side of her house, which read, "Moose River Town Clerk and Tax Collector."

[¶ 5] Bell's responsibilities included issuing birth and death certificates and marriage licenses, running elections, registering motor vehicles and snowmobiles, and collecting real estate and excise taxes. She was also responsible for keeping Town records. Bell received about $300 per month as compensation for her work for the Town. During an average year, approximately 200 people would enter Bell's home to conduct Town business.

[¶ 6] The Town never inspected Bell's home after she became the town clerk and never imposed any requirements on her to keep the home safe. The Town never helped Bell with shoveling, sanding, or plowing her property, nor did it provide any support for the maintenance of her home. There were no written policies or agreements between the Town and Bell regarding her responsibilities as town clerk.

[¶ 7] On January 23, 2004, Rodriguez went to Bell's home with her husband and two children to register two motor vehicles. Rodriguez had called Bell beforehand to schedule the appointment. There was some snow and ice on the sides of the steps leading into Bell's home, but the middle of the steps was clear. During the registration process, Rodriguez had to

leave Bell's home to retrieve her checkbook. She descended and ascended the three steps into the home without incident.

[¶ 8] After conducting her business, Rodriguez exited the home carrying one of her children in a car seat. As she reached the top step, Rodriguez turned around to thank Bell and say goodbye. Rodriguez asserts that she fell when she stepped down to the middle cement step outside of Bell's home. Bell asserts that she observed Rodriguez catch her feet on the threshold of the door before ever exiting the house. Rodriguez did not remember anything slippery on the step, but said that her foot slipped or gave way. As she fell, Rodriguez dropped the car seat flat, so that her son would not be injured. Rodriguez injured her leg as a result of the fall.

[¶ 9] Some time prior to Rodriguez's fall, there was a handrail on Bell's front steps. She had removed the handrail when she noticed that it was wiggling. Bell did not check with the Town before removing the handrail. The Town never took any steps to replace the handrail at Bell's home. The Town's first selectman stated that if Bell had asked the Town to replace her handrail, the Town would not have done so because the town clerk should be responsible for maintaining his or her property.

[¶ 10] At some point after Bell became town clerk, her homeowner's insurance policy expired. The first selectman was aware of this, but believed that the Town's insurance policy would cover injuries sustained by someone conducting Town business on Bell's premises. Bell also believed that her home would be covered under the Town's insurance policy for the purposes of theft or fire. Bell did not consider insurance coverage for a personal injury because in her belief, "neighbors don't sue . . . neighbors."

[¶ 11] At the time of the fall, the Town was a member of the Maine Municipal Association Property & Casualty Pool (MMA), a self-insured municipal risk pool. The MMA member coverage certificate listed three buildings. Bell's home was not among the covered buildings. Under the MMA policy, coverage was not available for private residences such as Bell's. The first selectman had not looked through the entire policy and did not realize that the Town had not sought, nor could the MMA provide, coverage for injuries that could occur on Bell's property. The Town has now changed its practice and utilizes leased space in a commercial building for the Town office.

[¶ 12] In her lawsuit, Rodriguez claimed that Bell and the Town had been negligent in failing to properly maintain Bell's property. Rodriguez alleged that, had there been a handrail in place, it could have assisted her in walking down the steps, or she could have grabbed it to prevent her fall. In responding to Bell's and the Town's motions for summary judgment, Rodriguez submitted the deposition testimony of her expert who asserted that the lack of a handrail contributed to Rodriguez's fall "because a handrail is a very essential necessary safety device on any stairway," and it would have helped guide Rodriguez down the stairway.

[¶ 13] Based on this record, the court denied Bell's motion for summary judgment on Rodriguez's complaint against her. The court determined that it could not conclude that Bell was entitled to discretionary function immunity or limited liability. Furthermore, the court found that Rodriguez had raised a genuine issue of material fact regarding whether Bell was negligent.

[¶ 14] The court granted the Town's motion for summary judgment. The court held that because the Town did not pay any rent or lease payments to Bell, did not

take any responsibility for maintenance or upkeep of the residence, and did not require any specific maintenance responsibilities, the court could not find that the Town operated, maintained, or exercised control over the residence. Thus, the court found that Bell's residence was not a "public building" pursuant to the immunity exception of the MTCA, 14 M.R.S. § 8104–A(2).

[¶ 15] Bell filed her appeal of the denial of her motion for summary judgment. After the court denied Rodriguez's motion for reconsideration of the court's order granting the Town's motion for summary judgment, Rodriguez filed her cross-appeal. Rodriguez also filed a motion for entry of final judgment pursuant to M.R. Civ. P. 54(b)(1) with respect to her claim against the Town. The court, however, did not act on this motion.

## II. DISCUSSION

### A. The Final Judgment Rule

■ [¶ 16] Although an appeal of a denial of a motion for summary judgment is generally barred by the final judgment rule, appeals based on a denial of a dispositive motion asserting immunity from suit are immediately reviewable. *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 6, 850 A.2d 325, 328. Even when the trial court decides that there is a dispute of material fact regarding immunity, we will reach the merits of an appeal if the parties do not dispute the facts as alleged by the nonmoving party. *See Andrews v. Dep't of Envtl. Prot.*, 1998 ME 198, ¶ 5, 716 A.2d 212, 215.

■ [¶ 17] Here, there does not appear to be a dispute about the facts relevant to whether Bell is entitled to immunity. Therefore, we will reach the merits of her appeal. Additionally, although Rodriguez's cross-appeal is interlocutory, be-

cause Bell's appeal is ripe for consideration and contains similar questions of law, for efficiency purposes, we also reach the merits of Rodriguez's appeal. *See Webb v. Haas*, 1999 ME 74, ¶ 17, 728 A.2d 1261, 1267.

### B. Bell's Entitlement to Immunity

[¶ 18] Bell contends that, on the undisputed facts, she is entitled to discretionary function immunity, 14 M.R.S. § 8111(1)(C), because her decision not to replace the handrail was a discretionary decision in furtherance of her role as the town clerk. She also asserts her entitlement to intentional act immunity, 14 M.R.S. § 8111(1)(E), because she claims her decision was in the course and scope of her employment.

■ [¶ 19] We review a denial of a motion for summary judgment based on a claim of immunity for errors of law, viewing the evidence in the light most favorable to the nonmoving party. *Sanford*, 2004 ME 73, ¶ 6, 850 A.2d at 328.

[¶ 20] Here, there is no dispute that Bell is a government employee pursuant to 14 M.R.S. § 8102(1). For purposes of the MTCA, a government employee is "a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation...." *Id.* Bell was an elected Town official and received compensation from the Town for her services.

[¶ 21] An employee of a governmental entity is immune from personal liability if the incident arose from the employee's performance of or failure to perform "any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is per-

formed is valid." 14 M.R.S. § 8111(1)(C). This "absolute immunity" shall be applied "whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, [etc.] ... and shall be available to all governmental employees...." *Id.* § 8111(1).

■ [¶ 22] We apply a four-part test to determine whether discretionary function immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Norton v. Hall,* 2003 ME 118, ¶ 7, 834 A.2d 928, 931 (quoting *Roberts v. State,* 1999 ME 89, ¶ 8, 731 A.2d 855, 857). However, "[i]n cases where the questioned conduct has little or no purely governmental content but instead resembles decisions or activities carried on by people generally, there is an objective standard for judgment by the courts and the doctrine of discretionary immunity does not bar the action." *Adriance v. Town of Standish,* 687 A.2d 238, 241 (Me.1996) (quotation marks omitted); *see also* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 1040 (W. Page Keeton ed., 5th ed.1984) ("specific acts of negligence are often clearly 'operational,' so that the government is readily held liable for ... negligent maintenance of property").

■ [¶ 23] The essential question with respect to Bell's entitlement to discretionary function immunity is whether Bell's failure to install or replace the handrail on her front steps constituted a discretionary act "reasonably encompassed" by her duties as the town clerk and tax collector. As a general rule, operational decisions, such as those regarding the safety or maintenance of premises, fall outside the scope of discretionary function immunity, unless those decisions serve some other government policy or purpose. *Compare Adriance,* 687 A.2d at 241–42 (denying the Town's assertion of discretionary function immunity for a transfer station attendant's failure to close a safety-gate), *with Berard v. McKinnis,* 1997 ME 186, ¶ 11, 699 A.2d 1148, 1152 (affirming grant of discretionary function immunity to a supervisor who revealed reasons for withdrawing an employee's license sponsorship to the governing agency); *cf. Roberts,* 1999 ME 89, ¶ 5, 731 A.2d at 856 (noting that the court granted immunity to an official and to the State on all counts of the complaint except for the negligent maintenance of a prison door).[1] Otherwise, government officials could be immune from suit for allowing the persistence of hazardous conditions on

---

1. Bell argues that discretionary function immunity applies more broadly to government employees than it does to government entities, and therefore *Adriance v. Town of Standish,* 687 A.2d 238 (Me.1996), which dealt with the application of discretionary function immunity to a town, does not apply to Bell's situation. Bell does not, however, cite to any persuasive authority to support this point.

property that they are required to maintain.[2]

■ [¶ 24] Here, the undisputed facts establish that although the Town required Bell to conduct Town business out of her home, the Town did not impose any requirements or assist Bell in maintaining her property. Bell's decision not to install or replace the handrail did not involve a basic governmental policy related to performing duties as the town clerk, was not an act essential to the realization or accomplishment of such a policy, and did not require Bell to exercise a policy evaluation, judgment, or expertise. Rather, Bell's choice not to replace the handrail resembles a decision ordinarily made by the general population, relating to the duty of care a landowner owes to the people who enter upon his or her property. Based on the facts presently in the record and reviewed in light of our precedents, Bell is not entitled to discretionary function immunity.

■ [¶ 25] Bell also asserts that she is entitled to intentional act immunity because her decision not to replace the handrail was made in the course and scope of her employment. Employees of governmental entities may avoid personal civil liability for "[a]ny intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith." 14 M.R.S. § 8111(1)(E). In other words, this section provides immunity for "a government employee's intentional, good-faith acts or omissions." *Grossman v. Richards*, 1999 ME 9, ¶ 12, 722 A.2d 371, 375. By her own admission that she was not capable of replacing the handrail herself and her husband was too busy, Bell's failure to replace the handrail was not an intentional act, and therefore, her argument that she is entitled to intentional act immunity fails as a matter of law.

■ [¶ 26] Although Bell is not entitled to immunity as a matter of law, she is entitled to limited liability as a government employee. Pursuant to 14 M.R.S. § 8104-D, "the personal liability of an employee of a governmental entity for negligent acts or omissions within the course and scope of employment shall be subject to a limit of $10,000 for any such claims

---

**2.** In *American Exchange Bank of Madison, Wisconsin v. United States*, 257 F.2d 938 (7th Cir.1958), the plaintiff fell down the steps of a post office and brought a claim against the United States under the Federal Tort Claims Act because there were no handrails on the steps leading into the building. *Id.* at 939. Reversing the district court's dismissal of the plaintiff's case, the Seventh Circuit held, inter alia, that the decision whether to install a handrail as a safety measure did not fall into the category of discretionary functions. *Id.* at 941. The court stated, "whether a handrail should be installed as a safety measure on wide stone steps involves action at the operational level and would seem to involve no more discretion than fixing a sidewalk on post office grounds that might be in need of repair." *Id.; see also McNamara v. United States*, 199 F.Supp. 879, 880–81 (D.D.C.1961) (declining to impose discretionary function immunity for failing to make safe a worn and uneven floor at the Capitol building); *Stuckman ex rel. Nelson v. Salt Lake City*, 919 P.2d 568, 575–76 (Utah 1996) (same for the City's failure to fix a fence between a park and a river); *Tomich v. City of Pocatello*, 127 Idaho 394, 901 P.2d 501, 504–05 (1995) (same where the City failed to maintain aircraft tie-downs); *cf. Estate of Walters v. United States*, 474 F.3d 1137, 1139–40 (8th Cir.2007) (upholding the application of discretionary function immunity to a suit against a federal agency for failing to maintain roads because a regulation gave the agency discretion to consider available funds when deciding the extent to maintain roads); *Cayer v. Me. Corr. Ctr.*, 1997 Me.Super. LEXIS 188 (Me.Super. June 17, 1997) (applying discretionary function immunity to the prison's decision not to install grab bars in showers because the decision was based on a security risk policy).

arising out of a single occurrence...." An employee's action falls within the scope of employment if "(a) it is of the kind he [or she] is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." *Spencer v. V.I.P., Inc.*, 2006 ME 120, ¶ 6, 910 A.2d 366, 367 (quoting RE-STATEMENT (SECOND) OF AGENCY § 228(1) (1958)). Because Bell was required to open her home to the public as part of her duties as town clerk and tax collector, her failure to replace the handrail on her stairs was an act within the scope of her employment.

## C. The Town's Entitlement to Immunity

[¶ 27] Rodriguez argues that Bell's residence should be considered a "public building" pursuant to the government entity exception to the MTCA, and therefore, the court should not have granted summary judgment in favor of the Town.

[¶ 28] Except as otherwise provided, the MTCA states, "all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S. § 8103. There are certain exceptions to this general rule, one having to do with public buildings, which states in relevant part:

> 2. **Public Buildings.** A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building.

14 M.R.S. § 8104–A(2).[3] The statute excludes from the public building exception unimproved land, historic sites, land or facilities used primarily for public recreation, dams, and property obtained by the government by reason of tax delinquency or eminent domain. 14 M.R.S. § 8104–A(2)(A)–(C). The MTCA, however, provides no further definition of public building, and there is no other definition appearing in any other section of the Maine Revised Statutes.

■■■■ [¶ 29] The proper interpretation of a statute is a question of law that we review de novo. *Beane v. Me. Ins. Guar. Ass'n*, 2007 ME 40, ¶ 9, 916 A.2d 204, 207. When interpreting a statute, our primary objective is to "give effect to the intent of the Legislature." *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. "If the statute's meaning is clear, we do not look beyond its words, unless the result is illogical or absurd. ... If the statute is ambiguous, we look to the legislative history to determine the intent of the Legislature." *Cyr v. Madawaska Sch. Dep't*, 2007 ME 28, ¶ 9, 916 A.2d 967, 970 (quotation marks omitted). The express exceptions to governmental immunity must be strictly construed to adhere to the general rule. *Sanford*, 2004 ME 73, ¶ 10, 850 A.2d at 329.

[¶ 30] The parties do not dispute that Bell held out her home to the public to conduct official Town business. For all intents and purposes, Bell's home functioned as a public building as well as her private residence. Therefore, the resolution of the building's status appears to turn on whether or not a "public building" must be publicly owned or otherwise governmentally controlled through lease or contract in order to fall within the "public building" exception to the MTCA.

---

3. There does not appear to be any dispute that the stairs leading into Bell's home would be considered part of the "building" for purposes of the exception. The public building exception applies to appurtenances, defined as "an object or thing that belongs or is attached to a public building, and does not include personal property maintained outside the building." *Sanford v. Town of Shapleigh*, 2004 ME 73, ¶ 11, 850 A.2d 325, 329.

[¶ 31] We have never explicitly defined the meaning of "public building." In *Adriance*, we held that the trial court correctly categorized a waste transfer station as a "public building." 687 A.2d at 240. In focusing on the public character of the transfer station, we stated: "The transfer station is permanent, fully enclosed and completely open to the public and falls squarely within the public building exception to sovereign immunity." *Id.; see also Lovejoy v. State*, 544 A.2d 750, 751 (Me. 1988) (holding that a camouflaged, underground assault shelter on a military training base, used exclusively for military training, was not a public building).

[¶ 32] Because we have not expressly defined "public building," we look to its plain meaning. A "public building" is "[a] building that is accessible to the public; esp[ecially] one owned by the government." BLACK'S LAW DICTIONARY 1243 (7th ed.1999).

[¶ 33] In accordance with *Adriance* and the plain meaning definitions, the function a building performs and its character in relation to the public are important factors in determining whether a building is "public." There is no dispute that the Town required Bell, its town clerk and tax collector, to perform official duties at her home. The residents of the Town had no choice but to go to Bell's home to perform legally necessary Town business, such as registering motor vehicles and paying taxes. Bell put a sign on her home, allowed residents to come into her home to conduct official Town business, and did not restrict her hours of service.

[¶ 34] Although the Town imposed no requirements and did not assist Bell in maintaining her home, it did impose control over Bell's duties as town clerk and tax collector, gave her Town property such as a computer and office furniture, and entrusted her with Town documents and records. The Town paid Bell only a small stipend for her work, despite her willingness to open up her home to the public for the benefit of the Town, yet did not have a policy in place to protect Bell from liability related to her property. In fact, the Town's policy from the MMA could not have covered Bell's home, even if the Town had applied for coverage.[4]

[¶ 35] Based on the record, Bell's home was used to "provid[e] services to the people on a business basis," was "under some degree of civic or state control," and was "a place accessible or visible to all members of the communities."[5] We con-

---

4. The Legislature created the narrow exceptions to governmental immunity under the assumption that governmental entities would acquire insurance to cover liability for claims outside immunity protection:

> The Legislature last January enacted the Maine Tort Claims Act, which reestablished the rule of sovereign immunity for governmental entities, but provided that commencing July 1st of this year there would be open to liability certain specific areas, particularly the areas of motor vehicle, equipment, construction and then the use and maintenance of public buildings .... The areas that we intend to open were areas where it appeared likely that an insurance program could be arranged within the reach of the pocketbooks of Maine communities and the State.... [F]or the small towns, it is vitally important that there be insurance in the areas where the town is exposed to liability.

2 *Legis. Rec.* 1644 (1977) (remarks of Sen. Collins). Had either Bell or the Town had insurance to cover Rodriguez's injuries, this dispute might not be here today.

5. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (2002) (defining "public").

> [a]uthorized or administered by or acting for the people as a political entity, ... supported by or for the benefit of the people as a whole, ... providing services to the people on a business basis under some degree

clude that on the specific facts of this case, Bell's home was a "public building" within the meaning of the MTCA.

[¶ 36] The Town also argues that if we were to decide that Bell's home was a "public building" for purposes of the MTCA, then it was entitled to legislative act or discretionary function immunity. In relevant part, 14 M.R.S. § 8104–B provides that notwithstanding the "public building" exception to governmental immunity, a governmental entity is not liable for any claim resulting from:

1. Undertaking of legislative act. Undertaking or failing to undertake any legislative or quasi-legislative act, including, but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, rule, policy, resolution or resolve;

. . . .

3. Performing discretionary function. Performing or failing to perform a discretionary function or duty . . . .

■■■■ [¶ 37] For the same reasons discussed above with respect to Bell's appeal, we hold that the Town is not entitled to discretionary function immunity. Regarding legislative act immunity, it was not the Town's decision to operate its Town

office out of a private home that forms the basis of Rodriguez's negligence claim. Rather, the negligent act consists of the Town's failure to maintain safe conditions at Bell's home. Based on the record, we cannot conclude that this decision was the result of a legislative act and therefore, we hold that no dispute of material fact exists and the Town is not entitled to legislative act immunity.

[¶ 38] Accordingly, because Bell's home was a "public building" and the Town was not entitled to legislative act or discretionary function immunity, we vacate the trial court's grant of summary judgment in favor of the Town.

The entry is:

Denial of Bell's motion for summary judgment affirmed. Grant of summary judgment in favor of the Town vacated. Remanded for further proceedings consistent with this opinion.

---

of civic or state control . . . a place accessible or visible to all members of the community.