# United States Court of Appeals
## For the First Circuit

No. 10-2370

MICHAEL FORTIN,

Plaintiff, Appellant,

v.

JACOB TITCOMB,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John H. Rich III, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Michael A. Feldman, with whom Leslie Feldman-Rumpler was on brief, for appellant.
Douglas I. Louison, with whom Louison, Costello, Condon & Pfaff, LLP was on brief, for appellee.

January 26, 2012

**LIPEZ, <u>Circuit Judge</u>**.  A federal jury awarded appellant Michael Fortin $125,000 in damages against a Wells, Maine police officer after finding that the officer negligently used force in arresting Fortin in 2007.  In a post-judgment ruling, the district court reduced the award to $10,000 – the maximum set by the Maine Tort Claims Act ("MTCA" or "Act") for the personal liability of government employees.  <u>See</u> Me. Rev. Stat. Ann. tit. 14, § 8104-D.  On appeal, Fortin argues that the MTCA's personal-liability cap is inapplicable here because the officer was covered by an insurance policy that triggered a higher limit under the Act.

After carefully examining the statutory scheme, cases interpreting the MTCA, and the insurance policy, we have determined that the appeal turns on two unresolved questions of Maine law.  Specifically, whether Fortin is limited to recovery of a $10,000 award depends on the unexplored relationship among several provisions of the MTCA governing damage awards against government employees.  Our analysis may also require determining what interpretive rule should be applied to ambiguous insurance policies providing MTCA liability coverage.  We have found "no clear controlling precedents" in Maine law to guide us on these issues, which require policy choices we believe are properly reserved for the state's courts.  Me. Rev. Stat. Ann. tit. 4, § 57.  Hence, we certify the two questions identified below to the Maine Supreme Judicial Court ("the Law Court").  <u>See</u> <u>id.</u>; Me. R. App. P. 25(a).

## I. Background

The facts surrounding Fortin's arrest are immaterial to the legal issues, and we thus recite only the procedural background of the case. Fortin filed this action in May 2009 against appellee Jacob Titcomb, a Wells police officer, and six other defendants, asserting federal and state civil rights violations and a state-law negligence cause of action stemming from the alleged use of excessive force to arrest him two years earlier.[1] In September 2010, at the end of a three-day trial, the jury rejected the civil rights claims but found Titcomb liable under state negligence law for injuring Fortin. The court had instructed the jury that an arrest is a discretionary act for which police officers are entitled to immunity under Maine tort law "unless the officer's conduct was so egregious that it clearly exceeded the scope of any discretion an officer could have possessed in his or her capacity as a police officer." See Richards v. Town of Eliot, 780 A.2d 281, 292 (Me. 2001); Polley v. Atwell, 581 A.2d 410, 413-14 (Me. 1990). The jury's judgment thus incorporated a finding that Titcomb was

---

[1] The other defendants were Ogunquit Police Officers Matthew Buttrick and Michael Faia, the Town of Wells, the Town of Ogunquit, Wells Police Chief Richard Connelly, and Ogunquit Police Chief Patricia Arnaudin. The district court granted summary judgment for all defendants but Titcomb and Buttrick. We dismissed appellant's appeal from the judgment against Buttrick on motion of all parties. This opinion therefore addresses only the liability of appellee Titcomb.

not entitled to immunity; the jury assessed $125,000 in damages against him.

Titcomb subsequently filed a motion under Federal Rule of Civil Procedure 59(e) asking the court to amend the judgment to conform to § 8104-D of the MTCA, which expressly limits the personal liability of government employees for negligence to $10,000.[2]  Although insurance coverage may affect the availability and amount of damages under the MTCA, see Me. Rev. Stat. Ann. tit. 14, § 8116, Titcomb argued that the Town's insurance policy, which provided coverage for the officer, did not affect the applicability of § 8104-D.  Titcomb further asserted that, even if the policy limits governed the damages award, Fortin's recovery was limited to $10,000 by the policy's express terms.

The district court granted the motion to amend.  It sidestepped Fortin's contention that Titcomb had not submitted proper evidence of insurance coverage showing eligibility for the

---

[2] The provision states:

> Except as otherwise expressly provided by section 8111 or by any other law, and notwithstanding the common law, the personal liability of an employee of a governmental entity for negligent acts or omissions within the course and scope of employment shall be subject to a limit of $10,000 for any such claims arising out of a single occurrence and the employee is not liable for any amount in excess of that limit on any such claims.

Me. Rev. Stat. Ann. tit. 14, § 8104-D.

statutory cap,[3] holding that the officer was entitled to an amended judgment under § 8104-D whether or not the insurance policy was considered. The court stated that Fortin bore, and failed to meet, the burden to proffer evidence showing that the statutory cap on the officer's liability was superseded by an insurance policy providing greater coverage. Moreover, the court read the policy excerpts that the defendant submitted to expressly retain the § 8104-D cap. Thus, in the district court's view, the result was the same – i.e., a statutory limitation of $10,000 was placed on Fortin's recovery – whether or not the court relied on the defendants' policy evidence.

On appeal, Fortin argues that the district court misapprehended both the MTCA and the insurance policy. He asserts that, under Maine case law, Titcomb bore the burden to show a lack of coverage for damages exceeding the $10,000 limit of § 8104-D and that the officer failed to satisfy that obligation. Fortin contends that, in fact, the Town of Wells' policy endorsement expressly provides coverage in excess of that cap.

---

[3] Titcomb attached to his motion only the policy endorsement related to coverage for law enforcement activities. The attachment did not identify the Town of Wells as the insured, however, and it also did not identify the insurance company that issued the policy. Nor did it state the policy coverage dates. It consisted of two paragraphs, quoted infra, stating the criteria for the $1 million coverage. The full policy, issued by Redland Insurance Company, was attached to Titcomb's Reply to Plaintiff's Objection to Defendant's Motion to Alter or Amend.

We begin our discussion with a review of the relevant provisions of the MTCA before examining whether the statute commands a particular outcome here. Because that examination raises significant and difficult issues of Maine law on which there is no controlling precedent, we have decided to certify a question concerning the MTCA's construction to the Law Court. We have recognized that certification may be an appropriate option even where, as here, the parties have not requested it. See Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 119 n.2 (1st Cir. 2010) (holding that "[t]his court has discretion to certify questions to the SJC when a party fails to move for certification in the district court, or to do so sua sponte"); Me. Drilling & Blasting, Inc. v. Ins. Co. of N. Am., 34 F.3d 1, 3 (1st Cir. 1994) (noting that the court on occasion certifies "questions to a state's highest court upon our own motion").

If the Law Court determines that Fortin's right to recover the full jury award is not limited by the MTCA, the coverage provided by the town's insurance policy will become the centerpiece of the parties' dispute. We thus describe the parties' debate over the policy language and explain why the policy interpretation also raises a question of state law requiring guidance from the Law Court.

## II. The Maine Tort Claims Act

### A. Limitation of Liability under the MTCA

The MTCA contains several provisions that speak to the amount of damages available to a plaintiff who brings a successful claim against a governmental entity or its employees. The provision at the core of this case, § 8104-D, is titled "Personal liability of employees of a governmental entity," and it limits the out-of-pocket exposure of a government employee to $10,000 for any claims arising out of a single occurrence. Me. Rev. Stat. Ann. tit. 14, § 8104-D; see supra note 2. Another provision of the Act, titled "Limitation on damages," sets a $400,000 cap on the award of damages that may be obtained "against either a governmental entity or its employees, or both . . . for any and all claims arising out of a single occurrence." Me. Rev. Stat. Ann. tit. 14, § 8105(1). The § 8105 limit is explicitly superseded in certain instances, however, when a governmental entity procures liability insurance: "If the insurance provides protection in excess of the limit of liability imposed by section 8105, then the limits provided in the insurance policy shall replace the limit imposed by section 8105." Id. § 8116.[4]

---

[4] The substitution of the policy limits for the statutory limit applies to claims for which immunity is waived by the MTCA "or under any other law." Me. Rev. Stat. Ann. tit. 14, § 8116. If the policy covers actions for which the government would otherwise be immune from liability, "the governmental entity shall be liable . . . but only to the limits of the insurance coverage." Id.

## B. Personal Liability vs. Limitation of Damages

Appellee Titcomb argues that this case is easily resolved by reference to the terms of § 8104-D, which he reads to impose a $10,000 ceiling whenever damages are awarded against a government employee in his personal capacity. He argues that § 8105, which allows damages up to $400,000 against a governmental entity <u>or an employee</u>, must apply only to employees in their official capacity because that provision otherwise would be inconsistent with § 8104-D's much lower cap. He points out that official-capacity suits are, in essence, suits against the employing governmental entities. Hence, narrowly construing the word "employee" in § 8105 retains the distinction between the government's liability – capped at $400,000 under § 8105 – and the individual's liability – capped at $10,000 under § 8104-D.

No Maine cases address the relationship between §§ 8104-D and 8105, and Titcomb's depiction of the statutory scheme presents one plausible interpretation of the MTCA. Section 8104-D explicitly caps the recovery of damages from individual employees at $10,000, and that clear limitation would be inconsistent with § 8105 if the latter provision were construed to allow up to $400,000 in damages against such individuals. Arguably, then, the reference in § 8105 to "employees" cannot refer to the category of employees covered by § 8104-D, i.e., those sued in their personal capacity.

-8-

That construction is reinforced by the language of § 8116, which allows governmental bodies to procure insurance coverage "against liability for any claim against it or its employees for which immunity is waived." Me. Rev. Stat. Ann. tit. 14, § 8116. Section 8116 makes no reference to § 8104-D. Rather, it states: "If the insurance provides protection in excess of the limit of liability imposed by section 8105, then the limits provided in the insurance policy shall replace the limit imposed by section 8105." A fair reading of § 8116, in the context of §§ 8104-D and 8105, could lead to the conclusion that § 8104-D is a stand-alone provision that applies to personal-capacity claims against governmental employees, while §§ 8105 and 8116 apply to all other types of claims involving governments and their employees. Under that construction of the MTCA, the district court would have properly reduced Fortin's award to the $10,000 limit set by § 8104-D.

Titcomb's construction has some support in the Maine Law Court's requirement to "strictly construe" the MTCA. Darling v. Augusta Mental Health Inst., 535 A.2d 421, 424 (Me. 1987); see also Mueller v. Penobscot Valley Hosp., 538 A.2d 294, 297-98 (Me. 1988) (rejecting "a broad reading" of the Act). The Law Court appears to be particularly strict in construing the provisions of the MTCA that govern suits against government employees. In Darling, for example, the court explained that "the Tort Claims Act, both by the limits it places on personal liability of employees and by the

discretionary authority it grants an immune entity to defend and indemnify a nonimmune employee, articulates the significant state interest in regulating the conditions under which suit can be prosecuted against government employees." See Darling, 535 A.2d at 429.

As one example of that interest, the court emphasized that "the Act limits to $10,000 the amount that a plaintiff can recover in a personal suit against a nonimmune employee." Id. at 430 (emphasis added). Although this statement is dicta, and does not consider the possible impact of insurance coverage on the § 8104-D cap, it reflects an assumption by the Law Court that a plaintiff's recovery in a personal suit against a government employee is limited to $10,000.

Similarly, in Moore v. City of Lewiston, 596 A.2d 612 (Me. 1991), the Law Court concluded that § 8116 operates differently as to government entities than as to government employees sued in their personal capacity. In Moore, the court noted that, under § 8116, the City of Lewiston could have waived its statutory immunities in its liability insurance policy; it thus held that summary judgment on the basis of those immunities, without a copy of the City's liability insurance policy in evidence, was premature. See id. at 615. The court went on to hold, however, that the City could not override the personal immunity of its employees by purchasing insurance, contrasting the

explicit waiver in § 8116 of governmental immunity with the absence of any such explicit waiver for individual employees. See id. (concluding that "regardless of whether the City's insurance coverage extended to the defense or indemnity of the police officers, their personal immunity from liability could not have been waived" by the City's purchase of insurance).

Although Moore addressed the issue of immunity rather than damages, Titcomb argues that its reasoning applies to him. Moore, he says, recognizes that § 8116 gives different effect to the availability of insurance for an employee sued in his personal capacity than for a government entity or an employee sued in his official capacity. He claims that it follows from Moore's discussion of employee immunity that an employee's liability also is unaffected by insurance coverage and, hence, remains subject to the $10,000 limit established by § 8104-D.

Titcomb's construction is not, however, the only plausible reading of the statutory scheme. As an initial matter, § 8105 refers to "employees" without qualification. Reading the statute to contain an "official-capacity" restriction would be a significant departure from its plain language – and thus an approach at odds with basic principles of statutory interpretation under Maine law. See Anastos v. Town of Brunswick, 15 A.3d 1279, 1283 (Me. 2011) ("In interpreting a statute, we first consider the plain language and will consider other indicia of legislative

-11-

intent if the language is silent or ambiguous."); Jusseaume v. Ducatt, 15 A.3d 714, 719 (Me. 2011) ("In interpreting a statute, we look first to the plain meaning expressed in the statute's language to discern the Legislature's intent."). Indeed, the Law Court has previously construed the term "employee" in another section of the MTCA to include a government employee in his or her personal capacity. See Mueller, 538 A.2d at 297 (rejecting plaintiff's argument that the notice requirement of Me. Rev. Stat. Ann. tit. 14, § 8107(4), referring to "a governmental entity or employee," does not apply to claims against employee as an individual).

It may also be significant that §§ 8104-D and 8105 by their terms address different matters: the former relates to personal liability, while the latter imposes a limit on damages. Hence, there arguably would be no consistency problem if a plaintiff were awarded more than $10,000 in damages against a government employee in his individual capacity, so long as the employee's personal exposure is capped at $10,000. In fact, the possibility of a damages judgment beyond the employee cap appears to be contemplated by the language of § 8104-D, which implicitly recognizes that the award may include an "amount in excess of th[e] limit." Me. Rev. Stat. Ann. tit. 14, § 8104-D. Thus, it is possible to conclude that, under the terms of §§ 8105 and 8104-D, a plaintiff may obtain an award of damages against a government

-12-

employee in his individual capacity up to $400,000 – but any amount over $10,000 is not recoverable from the employee himself.

The question would then be what alternative source of funding exists for the balance of such an award.  One possible answer, again requiring our attention to § 8116, is that the Maine legislature contemplated the availability of insurance coverage for that purpose.[5]  As noted above, § 8116 states that, where a governmental entity procures liability insurance, the policy limits will replace the $400,000 statutory cap if the insurance provides coverage "in excess of the limit of liability imposed by section 8105."  Id. § 8116.  Although we gave significance above to the absence of any reference in § 8116 to the § 8104-D cap, that omission does not necessarily reflect a legislative intent to strictly limit recoveries in personal-capacity claims to $10,000. It also is plausible to conclude that § 8116 does not reference § 8104-D simply because an employee's personal liability would be unaffected by insurance coverage.

Rather, in allowing a government to procure insurance "for any claim against it or its employees," § 8116 may have been

---

[5] The MTCA also contains an indemnification provision that allows a governmental entity, with the employee's consent, to "indemnify [the] employee against a claim which arises out of an act or omission occurring within the course and scope of employment and for which the governmental entity is not liable."  Me. Rev. Stat. Ann. tit. 14, § 8112(1).  Indemnification has not been raised by either party, and we therefore have no occasion to consider how, or if, it would affect Fortin's recovery here.

designed at least in part with the <u>victims</u> of government actors in mind – i.e., to provide a source of funds for payment of damages that could not be satisfied against the offending actor because the total award was "in excess" of the § 8104-D cap.  Because the insurance coverage would not override the limit of personal liability set by § 8104-D, there would be no reason to refer to that cap.  The pertinent limit on damages would instead be the $400,000 ceiling imposed by § 8105 for damages against governments and their employees.  Hence, § 8116 could have been intended to apply to personal-capacity claims as it would to any other tort claim against a government or governmental employee: where insurance coverage "provides protection in excess of the limit of liability imposed by section 8105," <u>see</u> <u>id.</u> § 8116, a plaintiff may recover up to the policy limit.

The legislative history of the MTCA's damages-related provisions could be read to support the view that § 8104-D does not remove personal-capacity claims from the scope of §§ 8105 and 8116. When first enacted in 1977, the MTCA contained no statutory cap on damages against employees other than in § 8105, which at that time imposed a $300,000 limitation for damages against "a governmental entity and its employees."  Me. Rev. Stat. Ann. tit. 14, § 8105(1) (1977).  Early on, however, the MTCA was amended to include a $10,000 limit on the personal liability of state – though not municipal – employees "in instances in which the State is immune."

-14-

Id. § 8103(3); see Me. Pub. Laws 1977, chap. 578, § 1.  In the same amending legislation, the language of § 8116 was modified so that it closely tracked the current version allowing governmental entities to purchase insurance for "claim[s] against it or its employees" and providing that the policy limit would replace "the limit of liability imposed by section 8105."  Me. Rev. Stat. Ann. tit. 14, § 8116 (1977); see Me. Pub. Laws 1977, chap. 578, § 5.  Not until 1986 was the $10,000 personal liability cap extended to all government employees, Me. Pub. Laws 1985, ch. 599, § 2, and the next year it was broadened to cover claims without regard to the employing entity's immunity.  See Pub. Laws 1987, ch. 110.  Later, the personal liability provision was recodified and became § 8104-D.  See Me. Pub. Laws 1987, ch. 740, § 4.

Thus, it is reasonable to conclude that the MTCA always reflected legislative intent to permit successful plaintiffs to obtain compensatory damage awards up to $300,000 (later, $400,000) based on the harmful actions of governmental employees performed as part of their employment.  Over time, the legislature also demonstrated its concern that employees at all levels of government be protected from personally bearing the burden of such large judgments.  Both of these concerns arguably are addressed by the combined effect of §§ 8104-D, 8105, and 8116: no individual employee will be saddled with responsibility beyond $10,000, but the plaintiff will be entitled to a more complete recovery – up to

the statutory or policy limits – when the offending employee's liability is covered by insurance. Reading § 8104-D to supersede the § 8105 liability limit in every instance, without regard to the availability of insurance, would defeat the balance the legislature may have intended to establish between remedying injuries caused by government employees and protecting those employees from financial ruin.

The Law Court's existing precedent on the MTCA does not provide guidance on the issue we face here. Most of the cases address the relationship between insurance coverage and immunity, without discussing the interaction of the various statutory limitations on damages. One such example is Moore, described above, in which the court held that access to employer-provided insurance does not waive the personal immunity of employees, as it does under § 8116 for insured governmental entities. See Moore, 596 A.2d at 616; see also Grossman v. Richards, 722 A.2d 371, 376 (Me. 1999) ("Section 8116 only affects the liability of governmental entities, and does not waive the immunity of the individual insured employees."); cf. Doucette v. City of Lewiston, 697 A.2d 1292, 1294-95 (Me. 1997) (holding that both police dispatcher and city possessed immunity, and that city's immunity was not waived under the terms of its insurance policy).

Here, however, immunity is not the issue. The jury found that Titcomb was not entitled to immunity, which paved the way for

-16-

an award of damages against him.  The sole question is whether the damages ceiling is set by § 8104-D or – because there is insurance coverage – by §§ 8105 and 8116.  Appellee invokes Rodriguez v. Town of Moose River, 922 A.2d 484 (Me. 2007), where the court held that § 8104-D limited the damages recoverable in an action against a government employee in her personal capacity.  Id. at 491-92.  In Rodriguez, however, there was no insurance policy available to supplement the $10,000 prescribed by the statute.  Id. at 488.

The two competing constructions of the MTCA that we have described each have policy rationales to justify them.  The Act effects a limited waiver of the government's sovereign immunity, and "even explicit waivers are construed narrowly."  Knowlton v. Att'y Gen., 976 A.2d 973, 977 (Me. 2009); see also Reid v. Town of Mount Vernon, 932 A.2d 539, 545 (Me. 2007) ("Statutory exceptions to the doctrine of sovereign immunity must be strictly construed."); Sanford v. Town of Shapleigh, 850 A.2d 325, 329 (Me. 2004) ("[S]overeign immunity is the rule, and liability for governmental entities [is] the statutorily created, narrowly construed exception." (quoting Clockedile v. Me. Dep't of Transp., 437 A.2d 187, 189 (Me. 1981) (alterations in original))).  Hence, we could not lightly conclude that the Maine Legislature intended to permit recoveries beyond the limit of § 8104-D via governmental insurance policies.  Even if government coffers would not be

directly affected by payment of the additional amount,[6] the possible indirect cost of higher insurance premiums is enough to give us pause. Indeed, the MTCA's legislative history indicates particular concern for local fiscs and the cost of insurance: the areas "open[ed] to liability" were those "where it appeared likely that an insurance program could be arranged within the reach of the pocketbooks of Maine communities and the State." Rodriguez, 922 A.2d at 493 n.4 (quoting 2 Legis. Rec. 1644 (1977) (remarks of Sen. Collins)).

At the same time, however, the MTCA itself is a policy statement that, in certain circumstances, the governmental immunity from suit should give way to the objective of compensating individuals who have been harmed by government actors.[7] The Legislature's apparent assumption was that "governmental entities would acquire insurance to cover liability for claims outside immunity protection," id., and § 8116 explicitly authorizes

---

[6] We see no basis under the MTCA for directly imposing Titcomb's excess damages obligation on the Town.

[7] The Law Court has stated that "[t]he central purpose of the MTCA was to restore the common law sovereign immunity that had been abrogated by this Court in Davies v. City of Bath, 364 A.2d 1269 (Me. 1976)." Beaulieu v. Aube Corp., 796 A.2d 683, 689 n.9 (Me. 2002). The court also has noted, however, that "[t]he MTCA applies a policy of broad liability to governmental employees, subject to the exceptions enumerated in [its] immunity provisions." Carroll v. City of Portland, 736 A.2d 279, 282 (Me. 1999); see also id. at n.3 ("Although, under the MTCA, liability is the rule and immunity the exception for governmental employees, immunity is the rule and liability the exception for governmental entities.").

governments to obtain such coverage for employees, as well as for the entities themselves. With $400,000 designated by § 8105 as the appropriate cap on recoveries "against either a governmental entity or its employees, or both," the Legislature's purpose to compensate victims of government-caused injury arguably would be suitably met by allowing insurance coverage for the amount "in excess of" § 8104-D's cap.

We deem the choice between these two paths a matter of state policy best left to the state's courts. See In re Hundley, 603 F.3d 95, 98 (1st Cir. 2010) (noting that resolution of a certified question "may require policy judgments about the applicability of [state] law that the SJC is in the best position to make"); Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 103 (1st Cir. 1999) (noting that certified question in that case was "quintessentially a policy judgment appropriately made for the state by its own courts"); see also Real Estate Bar Ass'n, 608 F.3d at 119 (noting "strong federalism interests that are furthered by providing the state courts with the opportunity to decide on underlying unsettled questions of state law"). Moreover, the statutory construction "could easily matter in future cases not involving these parties." Boston Gas. Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008). We therefore will certify the following question to the Law Court: Where an insurance policy procured by a governmental entity is available to cover a judgment

against a government employee sued in his personal capacity, is the applicable limit on the award of damages set by § 8104-D (i.e., $10,000) or by the combination of §§ 8105(1) and 8116 (i.e., $400,000 or the policy limit)?

### III.  The Insurance Policy

There is no dispute that the Town of Wells purchased insurance that covers appellee Titcomb.  The parties do dispute, however, the scope of the policy's coverage.  Thus, if the Law Court concludes that §§ 8105 and 8116 apply, we will need to consider whether the Town's policy in fact provides coverage for more than $10,000.  As we shall explain, that determination implicates another significant issue of Maine law.

### A. The Policy Language

The endorsement submitted with Titcomb's Rule 59 Motion to Amend consisted of several introductory lines and two substantive paragraphs that we reproduce in their entirety:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### LIMITS OF LIABILITY-MAINE TORT CLAIMS ACT

This endorsement modifies insurance provided under the following:

LAW ENFORCEMENT PROFESSIONAL LIABILITY COVERAGE PART

$ <u>1,000,000</u> Each Wrongful Act, $ <u>1,000,000</u> Aggregate Limit of Liability for causes of action seeking tort damages pursuant to the provisions of the Maine Tort Claims Act (14 M.R.S.A. 8101, et seq.).  Coverage is limited to those areas for which governmental immunity

-20-

has been expressly waived by 14 M.R.S.A. 8104-A, as limited by 14 M.R.S.A. 8104-B and 14 M.R.S.A. 8111. **Coverage amount for causes of action seeking tort damages pursuant to the provisions of the Maine Tort Claims Act are limited to those specified in 14 M.R.S.A. 8105 and 8104-D.** Liability coverage shall not be deemed a waiver of any immunities or limitation of damages available under the Maine Tort Claims Act, other Maine statutory law, judicial precedent or common law.

$ <u>1,000,000</u> Each Wrongful Act, $ <u>1,000,000</u> Aggregate Limit of Liability for all causes of action seeking tort damages pursuant to federal law or state law for which immunity or limitation of damages is not provided by the provisions of the Maine Tort Claims Act (14 M.R.S.A. 8101, et seq.).

App. at 26 (emphasis added).

## B. Construction of the Policy

We emphasize at the threshold of our analysis of the policy language that we are not asking the Law Court to construe the policy provisions. That is not an appropriate issue for certification. We present our reading of the policy to give context for the legal question we will pose.

The district court focused on the second full sentence of Paragraph 1, highlighted above, in concluding that the policy incorporated the limitation of liability contained in § 8104-D. Fortin counters that Paragraph 1 is entirely inapplicable in this case. He asserts that, pursuant to the preceding sentence describing coverage, Paragraph 1 applies only to instances in which governmental immunity has been expressly waived by § 8104-A. Here,

-21-

the officer's loss of immunity does not derive from a statutory waiver, but from the jury's finding that he behaved egregiously. Hence, Fortin argues, this case is governed by Paragraph 2 of the endorsement, which he construes to provide up to $1 million in liability coverage if there is <u>either</u> no statutory immunity <u>or</u> no statutory limitation of damages. Because Titcomb lacks statutory immunity, Fortin maintains that the policy provides up to $1 million in coverage for damages awarded against the officer.

Not surprisingly, Titcomb urges the district court's interpretation of the policy and asserts that Paragraph 1 explicitly limits Fortin's recovery to the $10,000 allowed by § 8104-D. He further argues that the $10,000 maximum would apply even if Paragraph 2 rather than Paragraph 1 governed this case because, in the words of the policy, that "limitation of damages is . . . provided by the provisions of the Maine Tort Claims Act."

The two-paragraph structure, with each paragraph beginning with a statement of $1 million in liability coverage, is a strong indication that the endorsement addresses two different categories of claims. The first full sentence of Paragraph 1 states that "[c]overage is limited to those areas for which governmental immunity has been expressly waived" by § 8104-A. As noted, this case, which does not involve a statutory waiver of

immunity, is not within the scope of that limitation.[8]  Logically, then, the next sentence in Paragraph 1, defining the "[c]overage amount" by reference, inter alia, to § 8104-D, also would not govern this case.  Rather, the more sensible reading of the sentence in context is that it describes the amount of insurance available for claims that fall within the just-identified scope of coverage.  Paragraph 1 thus appears to have a narrow focus: claims brought under the MTCA involving the types of conduct listed in § 8104-A, unless such conduct is otherwise immunized by §§ 8104-B and 8111.

By contrast, Paragraph 2's scope of coverage is stated much more generally.  It reaches any tort claim under federal or state law "for which immunity or limitation of damages is not provided by the provisions of the Maine Tort Claims Act."  Titcomb appears to suggest that this paragraph categorically excludes all tort claims covered by the MTCA; at oral argument, his counsel

---

[8] The waiver in § 8104-A applies to the ownership, maintenance or use of vehicles, machinery or equipment, Me. Rev. Stat. Ann. tit. 14, § 8104-A(1); the construction, operation, or maintenance of public buildings, id. § 8104-A(2); the discharge of pollutants, id. § 8104-A(3); and road construction, cleaning, or repair, id. § 8104-A(4).

The limitations on waiver contained in §§ 8104-B and 8111 cover claims against governmental entities and individual employees, respectively, arising out of various types of activities, including legislative, judicial, and prosecutorial functions; discretionary conduct; and military duties.  Id. §§ 8104-B, 8111.  Also excluded from the waiver are intentional acts or omissions by individual employees that occur within the course and scope of employment, unless the individual acted in bad faith.  Id. § 8111(E).

urged us to read the policy to provide more than $10,000 in coverage only for civil rights causes of action and not for ordinary negligence claims. Fortin reads Paragraph 2 to provide coverage if either of two alternative conditions is present: (1) if, as here, there is no statutory immunity, or (2) if there is no "limitation of damages . . . provided by the provisions of the Maine Tort Claims Act." He argues that the "limitation of damages" alternative cannot be read to negate coverage once coverage is triggered by the absence of immunity; such a reading, he points out, would appear to "exclude coverage in every conceivable case" under the MTCA because every MTCA recovery is subject to some statutory ceiling. In effect, that latter view is what Titcomb proposes – i.e., that Paragraph 2 is simply inapplicable to ordinary MTCA negligence claims.

We have little difficulty rejecting the parties' self-serving constructions of Paragraph 2, as it makes no sense to read the paragraph's reference to a damages cap as incorporating either of the extremes they suggest. See Jipson v. Liberty Mut. Fire Ins. Co., 942 A.2d 1213, 1216 (Me. 2008) ("The meaning of language in an insurance policy is a question of law."). On the one hand, an insured could not reasonably take Fortin's position that, where an absence of immunity opens the door to damages, Paragraph 2's invocation of statutory limits on the amount of the recovery becomes irrelevant. See Peerless Ins. Co. v. Wood, 685 A.2d 1173,

1174 (Me. 1996) (noting that, in construing insurance policies, a court "view[s] the contract language from the perspective of an average person, untrained in either the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured").  On the other hand, it is irrational to construe the limitations language as Titcomb does to entirely bar recovery where immunity is waived or inapplicable; allowing a recovery, after all, is the very point of withdrawing immunity.

Confronted with the illogic of both parties' interpretations, we conclude that a rational insured would read the policy language to provide some amount of coverage – up to the statutory limit – where there is no immunity.  Nothing in the language of Paragraph 2 limits its coverage to civil rights claims.  Indeed, if the paragraph were so limited, the endorsement would provide no coverage at all where immunity is waived based on the defendant's conduct rather than on a statutory provision – unless, of course, we go back to Paragraph 1 and widen its explicit, limited description of coverage to include actions involving conduct-based waivers of immunity.  As we have explained, however, the policy's format and language do not reasonably support such a construction.

Hence, we conclude that Paragraph 2 provides insurance for the damages awarded in this case up to the statutory limit.  A

question remains, however, as to which statutory maximum applies. Titcomb argues that the applicable statutory ceiling is the $10,000 limitation on personal liability specified by § 8104-D. That view incorporates an assumption that Paragraph 2 adopts the most restrictive possible limitations provision. Such a construction of the policy language is reasonable, but not inevitable. As described in Section II above, the MTCA may authorize governments to procure insurance on behalf of their employees that would allow plaintiffs to collect up to $400,000 in damages for personal-capacity claims (and more, if the insurance has a higher liability limit). Section 8105 thus imposes a "limitation of damages" that also may be reasonably applied to the circumstances of this case. Indeed, if § 8116 authorizes a governmental entity to procure insurance coverage for personal-capacity claims against its employees, it strikes us as equally likely that the cap on damages would be the $400,000 set by § 8105. Hence, Paragraph 2 reasonably could be read to state only that the maximum coverage for Fortin's award is $400,000.

In fact, the difference between the types of claims covered under Paragraphs 1 and 2 of the Endorsement suggests a plausible basis for distinction in the recoverable amount of damages. Paragraph 1 provides coverage for claims that arise in the limited set of categories for which the legislature has chosen to waive the immunity of governmental entities. By contrast,

Paragraph 2 includes coverage for claims involving conduct found to be so egregious that the statutory immunity to which the defendant-employee would otherwise be entitled is stripped away. In such cases, where individuals are harmed by outrageous on-the-job conduct of government actors, the employing entity reasonably could want to insure for the statutory maximum of $400,000 to more fully compensate the victims.

As the imprecise language of Paragraph 2 does not tell us which statutory cap applies here, it is necessary to apply an interpretive principle to construe the policy. Ordinarily, where language in an insurance policy is ambiguous, it is construed in favor of coverage. Jacobi v. MMG Ins. Co., 17 A.3d 1229, 1233 (Me. 2011); see also Korhonen v. Allstate Ins. Co., 827 A.2d 833, 836 (Me. 2003) ("'The language of a contract of insurance is ambiguous if it is reasonably susceptible of different interpretations,' and, if so, the contract will be strictly construed to resolve ambiguities in favor of coverage." (citation omitted)).

However, it is also true that the burden of showing insurance coverage lies on the person claiming coverage, here, Fortin. See Pelkey v. Gen. Elec. Capital Assurance Co., 804 A.2d 385, 387 (Me. 2002) ("It is [the claimant]'s burden . . . to show that his injury falls within the scope of the [insurance] contract."). Although there is no dispute that the Town of Wells policy provides some coverage for Fortin's claim, the same

competing state interests that gave us pause in interpreting the MTCA also cause us to question how Maine would apply these two divergent principles in determining the amount of available coverage. See supra pp. 17-19.[9]

That the direct burden of a coverage-favorable interpretation would be borne by the insurer, not the Town, does not eliminate the issue. The indirect result of a coverage-favorable interpretive principle could be increased costs for the Town if the insurer sought to recoup its "losses" through higher premiums. As noted above, ensuring the availability of affordable insurance was one of the Legislature's concerns in adopting the MTCA. See supra p. 18.

We therefore will certify the following question to the Law Court: In light of the competing state interests described, which interpretive principles should be applied to construe an insurance policy, procured by a governmental body to cover itself or its employees for MTCA damages liability, that contains an ambiguity affecting the scope of coverage?[10]

---

[9] The parties argue over the significance of Titcomb's submission of policy excerpts in support of his Rule 59 motion that identified neither the insured nor the insurer. Although they characterize the debate as a matter of who has the burden to establish insurance coverage, we see their argument as essentially a dispute over the authenticity of the excerpts. The parties, however, agree that the policy provisions described above apply here.

[10] This case presents the unusual posture of an insured – Titcomb – arguing for a construction of the policy adverse to

## IV. Certification

For the reasons set forth herein, we certify the following two questions to the Maine Supreme Judicial Court:

1. Where an insurance policy is available to cover a judgment against a government employee sued in his personal capacity, is the applicable limit on the award of damages set by § 8104-D ($10,000) or by the combination of §§ 8105(1) and 8116 ($400,000 or the policy limit)?

2. In light of the competing state interests described, which interpretive principles should be applied to construe an

---

coverage. Ordinarily, coverage disputes involve an insured arguing for coverage against the insurer. Here, it is a third party – Fortin – claiming that Titcomb has insurance coverage that Titcomb claims he does not have. That oddity, however, would not change the lens through which we view the policy language if we were applying the ordinary interpretive principle. Although the rule frequently is framed as construing the policy "in favor of the insured," see, e.g., Jipson, 942 A.2d at 1217, the Law Court also has routinely focused on the insurer and the objective of coverage. See, e.g., Kinney v. Maine Mut. Group Ins. Co., 874 A.2d 880, 885 (Me. 2005) ("Any ambiguity in an insurance policy must be resolved against the insurer and in favor of coverage."); Foremost Ins. Co. v. Levesque, 868 A.2d 244, 246 (Me. 2005) (same); Hall v. Acadia Ins. Co., 801 A.2d 993, 995 (Me. 2002) ("[I]t is a well-settled principle that if the language of an insurance policy is ambiguous or susceptible of varying interpretations, then the policy is construed against the insurer in favor of coverage." (alteration in original) (internal quotation marks omitted)); Johnson v. Allstate Insur. Co., 687 A.2d 642, 645 (Me. 1997) (noting that "ambiguous language is to be construed against the insurer"). The latter cases include reach and apply actions brought against insurance companies by third parties seeking to recover damages assessed against insureds in underlying judgments. See, e.g., Jacobi, 17 A.3d at 1233 (stating that "any ambiguities in an insurance contract are construed in favor of coverage"); Korhonen, 827 A.2d at 836 (same). The principle is thus applied regardless of the party urging coverage.

insurance policy, procured by a governmental body to cover itself or its employees for MTCA damages liability, that contains an ambiguity affecting the scope of coverage?

We would welcome further guidance from the Law Court on any other relevant aspect of Maine law that it believes would aid in the proper resolution of the issues.[11]

The clerk of this court is directed to forward to the Maine Supreme Judicial Court, under the official seal of this court, a copy of the certified questions and our decision in this case, along with the briefs and appendix filed by the parties. We retain jurisdiction pending that court's determination.

<u>So ordered</u>.

---

[11] We note another oddity in this case: neither the Town of Wells nor the insurer, the two parties to the insurance contract, is a party to the appeal. At oral argument, Titcomb's counsel asserted that if we were to conclude that the coverage amount exceeded the $10,000 cap on personal liability imposed by § 8104-D, the insurance company would refuse to pay the excess, forcing Fortin into new litigation against the insurer concerning the meaning of the policy. We do not know what impact certification will have on that prediction. We simply note the assertion for whatever insight it might provide to the Law Court.